**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2073**

IHAR SOTNIKAU,

　　　　　Petitioner,

　　　v.

LORETTA E. LYNCH, Attorney General,

　　　　　Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: December 8, 2016　　　　　Decided: January 24, 2017

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Petition for review granted; vacated and remanded by published
opinion. Judge King wrote the opinion, in which Judge Niemeyer
and Judge Agee joined.

**ARGUED**: Jason Matthew Zarrow, O'MELVENY & MYERS LLP, Washington,
D.C., for Petitioner. Keith Ian McManus, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON
BRIEF**: Mary Patrice Brown, O'MELVENY & MYERS LLP, Washington,
D.C., for Petitioner. Benjamin C. Mizer, Principal Deputy
Assistant Attorney General, Cindy S. Ferrier, Assistant
Director, Office of Immigration Litigation, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

KING, Circuit Judge:

After pleading guilty to involuntary manslaughter under Virginia law, Ihar Sotnikau — a native of Belarus who was admitted to the United States as a lawful permanent resident in 2008 — was subjected to removal proceedings. The Department of Homeland Security (the "DHS") instituted those proceedings because, in its view, Virginia's involuntary manslaughter offense constitutes a crime involving moral turpitude. Sotnikau sought asylum, withholding of removal, and protection under the Convention Against Torture (the "CAT"), contesting the DHS's interpretation of Virginia's involuntary manslaughter offense. After various proceedings, an immigration judge (the "IJ") and the Board of Immigration Appeals (the "BIA") rejected Sotnikau's applications, deeming him subject to removal. Importantly, both the IJ and the BIA concluded that involuntary manslaughter as defined by Virginia law is categorically a crime involving moral turpitude. As explained below, that ruling was erroneous, and we therefore grant Sotnikau's petition for review, vacate the order of removal, and remand.

I.

In the early hours of June 18, 2010, Sotnikau and his friend Randy Hines were drinking on a pier along the Elizabeth River in Portsmouth, Virginia. At some point, Hines fell down a

2

series of concrete steps and into the river. After fruitless efforts to locate Hines in the river's dark waters, Sotnikau retreated to a local homeless shelter. He did not otherwise seek assistance or alert the authorities.

At the shelter, someone overheard Sotnikau relating what had occurred at the pier and that Hines had died. That individual promptly relayed Sotnikau's remarks to the authorities. Thereafter, the police located Sotnikau, took him into custody, and questioned him. Sotnikau then related to the police what had transpired at the pier. Hines's body was found in the Elizabeth River on June 19, 2010. Sotnikau was charged with involuntary manslaughter by way of a one-count indictment in the Circuit Court of the City of Portsmouth. He pleaded guilty and was sentenced to five years in prison.

On October 21, 2011, the DHS instituted removal proceedings against Sotnikau, alleging removability based on his having been convicted in Virginia of a crime involving moral turpitude committed within five years of being admitted to the United States. See 8 U.S.C. § 1227(a)(2)(A)(i)(I) (rendering removable an alien who "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission"). On August 14, 2012, the IJ issued an oral decision (the "Initial IJ Decision"), which summarily denied Sotnikau's requests for asylum, withholding of removal, and protection under the CAT.

3

Sotnikau appealed the Initial IJ Decision to the BIA. In its January 8, 2013 order (the "Initial BIA Order"), the BIA observed that the IJ had failed to "set forth his reasoning as to why he ruled that the respondent was convicted of a [crime involving moral turpitude]." See Initial BIA Order 1. In the absence of a reasoned opinion, the BIA found itself unable to review the matter and, for that and other reasons, remanded to the IJ for further proceedings.

At the conclusion of the remand proceedings, by his March 26, 2013 decision (the "Remand IJ Decision"), the IJ again concluded that Sotnikau had been convicted of a crime involving moral turpitude, i.e., Virginia's involuntary manslaughter offense. After outlining Virginia law on involuntary manslaughter, the IJ discussed the BIA's 1994 decision in In re Franklin, 20 I. & N. Dec. 867 (BIA 1994). There, the IJ explained, the BIA had concluded that an involuntary manslaughter offense in Missouri constituted a crime involving moral turpitude because "the Missouri statute defined involuntary manslaughter as 'recklessly causing the death of another person.'" See Remand IJ Decision 3. According to the Remand IJ Decision, the mental state required to support a conviction for involuntary manslaughter under Virginia law is identical to the mental state at issue in the Franklin decision, rendering Virginia's involuntary manslaughter offense

4

categorically a crime involving moral turpitude. See id. The IJ also determined that Sotnikau is ineligible for withholding of removal because the crime for which he was convicted was "particularly serious." See id. (citing Immigration and Nationality Act § 241(b)(3)(B), 8 U.S.C. § 1231(b)(3)(B)). Thereafter, Sotnikau moved for reconsideration of the Remand IJ Decision, but the IJ denied that motion.

Again, Sotnikau appealed to the BIA. By its order of August 14, 2015 (the "Final BIA Order"), the BIA affirmed the Remand IJ Decision. Like the Remand IJ Decision, the Final BIA Order — which is the subject of the pending petition for review — ruled that the Franklin decision controls the outcome of this matter: "[W]e conclude that the offense of involuntary manslaughter in Virginia contains all of the requisite elements outlined in [Franklin] to make the offense categorically qualify as a crime involving moral turpitude." See Final BIA Order 3-4. The BIA therein also approved of the IJ's determination that Sotnikau had been convicted of a particularly serious crime, making both withholding of removal and asylum unavailable to him. As a result, the BIA dismissed Sotnikau's appeal and ordered his removal.[1]

---

[1] As the Final BIA Order explained, the IJ had theretofore, on September 19, 2013, deferred removal of Sotnikau, having granted his application for relief under the CAT. See Final BIA (Continued)

Sotnikau has timely petitioned this Court for review of the Final BIA Order. Our jurisdiction in this matter is provided by 8 U.S.C. § 1252.

II.

The dispositive issue in this proceeding is whether Sotnikau is subject to removal because involuntary manslaughter under Virginia law is categorically a crime involving moral turpitude.[2] Whether a crime is one involving moral turpitude, as that term is used in 8 U.S.C. § 1227(a)(2)(A)(i), "is a question of law that we review de novo." See Mohamed v. Holder, 769 F.3d 885, 888 (4th Cir. 2014). To resolve that question, we "consider only the statutory elements, not the facts underlying the particular violation of the statute." Id.

---

Order 1 n.1 ("Neither party has appealed the [IJ's] decision to grant deferral of removal [under the CAT], and therefore, that application is not before us."). The CAT application is not otherwise considered in the Remand IJ Order or the Final BIA Order.

[2] By his petition for review, Sotnikau also seeks to litigate a second issue, contending that he is entitled to asylum or withholding of removal because both the IJ and the BIA erroneously determined that his involuntary manslaughter conviction constituted a particularly serious crime. We do not address that issue, however, because we conclude that Sotnikau is not subject to removal.

6

The order of removal with respect to Sotnikau is predicated on 8 U.S.C. § 1227(a)(2)(A)(i), pursuant to which an alien is subject to removal if he "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission" and "for which a sentence of one year or longer may be imposed." It is readily apparent that the temporal aspect of that statutory provision is satisfied in this matter: Sotnikau was admitted to the United States as a lawful permanent resident in April 2008 and committed the relevant crime in June 2010. The same is true for the sentence component of that provision: involuntary manslaughter carries a penalty of "not less than one year nor more than 10 years." See Va. Code § 18.2-10(e) (specifying permissible punishment for Class 5 felony); see also Va. Code § 18.2-36 ("Involuntary manslaughter is punishable as a Class 5 felony.").

Sotnikau contends in his petition for review that his involuntary manslaughter offense under Virginia law does not constitute a crime involving moral turpitude. The Remand IJ Decision and the Final BIA Order ruled otherwise, concluding that Virginia's involuntary manslaughter offense constitutes a crime involving moral turpitude. They reached that conclusion on the basis of the BIA's decision in In re Franklin, 20 I. & N. Dec. 867 (BIA 1994), reasoning that "involuntary manslaughter in

7

Virginia has the same essential elements as involuntary manslaughter in Missouri, an offense that the [BIA] found qualifies as a crime involving moral turpitude." See Final BIA Order 3; see also Remand IJ Decision 3.

We are thus called upon to decide whether the Virginia involuntary manslaughter offense is one involving moral turpitude. In so doing, we are obliged to utilize a categorical approach. See Prudencio v. Holder, 669 F.3d 472, 484 (4th Cir. 2012). That is, we look at the elements of the crime at issue and determine whether those elements solely encompass behavior that involves moral turpitude. If they do, the crime is categorically one involving moral turpitude. But if those elements can include behavior that does not involve moral turpitude, the crime is not categorically one involving moral turpitude.

In order to properly interpret Virginia's involuntary manslaughter offense, we must first understand the meaning of "moral turpitude." A crime involving moral turpitude "must involve conduct that not only violates a statute but also independently violates a moral norm." See Mohamed v. Holder, 769 F.3d 885, 888 (4th Cir. 2014); see also id. ("[W]e have noted that 'moral turpitude' refers generally to 'conduct that shocks the public conscience as being inherently base, vile, or depraved.'" (quoting Medina v. United States, 259 F.3d 220, 227

8

(4th Cir. 2001))). That is to say, "[t]o involve moral turpitude, a crime requires two essential elements: a culpable mental state and reprehensible conduct." In re Ortega-Lopez, 26 I. & N. Dec. 99, 100 (BIA 2013). Accordingly, "[w]here knowing or intentional conduct is an element of an offense," the BIA has "found moral turpitude to be present." See In re Perez-Contreras, 20 I. & N. Dec. 615, 618 (BIA 1992). Those circumstances include criminally reckless conduct, which "reflect[s] a willingness to disregard the risks inherent in the conduct." Id. Criminally negligent conduct, on the other hand, is not included because "there [is] no intent required for conviction, nor any conscious disregard of a substantial and unjustifiable risk." Id. at 619.

With the foregoing principles in mind, we turn to the elements of the crime of involuntary manslaughter in Virginia. Under the Code of Virginia, involuntary manslaughter is punishable as a felony. See Va. Code § 18.2-36. The Supreme Court of Virginia has defined involuntary manslaughter as "the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act." See Gooden v. Commonwealth, 311 S.E.2d 780, 784 (Va. 1984). In Virginia, a defendant can be convicted of an

involuntary manslaughter offense upon a showing of criminal negligence, which occurs

> when acts of a wanton or willful character, committed or omitted, show a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, <u>or is charged with the knowledge of</u>, the probable results of his [or her] acts.

See <u>Noakes v. Commonwealth</u>, 699 S.E.2d 284, 288 (Va. 2010) (alteration in original) (emphasis added) (internal quotation marks omitted).  In simpler terms, an involuntary manslaughter conviction in Virginia requires that "the offender either knew or should have known the probable results of his acts."  See <u>Conrad v. Commonwealth</u>, 521 S.E.2d 321, 326 (Va. Ct. App. 1999 (en banc)).

An involuntary manslaughter conviction can be secured in Virginia without proving a <u>conscious</u> disregard of risks attendant to the offender's conduct; such a conviction can be predicated on proof that the offender failed to appreciate or be aware of the risks emanating from his conduct.  See <u>Noakes</u>, 699 S.E.2d at 289.  Pursuant to the BIA's decision in <u>Perez-Contreras</u>, that removes the Virginia involuntary manslaughter offense from the realm of those crimes that categorically involve moral turpitude.

In its <u>Perez-Contreras</u> decision in 1992, the BIA decided that an assault offense in the State of Washington did not

10

constitute a crime involving moral turpitude. That was because a conviction of the assault offense could be based on a showing of criminal negligence, which "exists when the perpetrator 'fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.'" See Perez-Contreras, 20 I. & N. at 618 (quoting Wash. Rev. Code § 9A.08.010(1)(d)). The BIA explained that, "[s]ince there was no intent required for conviction, nor any conscious disregard of a substantial and unjustifiable risk, we find no moral turpitude inherent in the statute." Id. at 619.

Virginia's involuntary manslaughter offense is not materially different from the Washington offense. Like the assault offense underlying the Perez-Contreras decision, the crime at issue here can be predicated on the offender's failure to be aware of the risks attendant to his actions. See Perez-Contreras, 20 I. & N. Dec. at 618 (observing that criminal negligence exists when "the perpetrator 'fails to be aware of a substantial risk'" (quoting Wash. Rev. Code § 9A.08.010(1)(d))); see also Conrad, 521 S.E.2d at 326 (recognizing that criminal negligence arises when the offender "should have known the probable results of his acts"). As in the Perez-Contreras decision, Sotnikau's involuntary manslaughter offense could have

11

been proven under Virginia law without a showing that he consciously disregarded any particularly serious risks. Accordingly, Virginia's involuntary manslaughter offense is not categorically a crime involving moral turpitude.

Notwithstanding the views expressed by the IJ and the BIA in the underlying proceedings, the BIA's Franklin decision does not compel a conclusion to the contrary. There, the BIA recognized that Missouri defined involuntary manslaughter as "[r]ecklessly caus[ing] the death of another person." See Franklin, 20 I. & N. Dec. at 870 (first alteration in original) (quoting Mo. Rev. Stat. § 562.016(4)). The BIA further observed in Franklin that Missouri's definition of "recklessness" is "essentially identical" to the definitions of recklessness construed in its other cases — "a conscious disregard for a substantial and unjustifiable risk, where the disregard constitutes a gross deviation from the standard of care which a reasonable person would employ." Id. (citing In re Wojtkow, 18 I. & N. Dec. 111 (BIA 1981); In re Medina, 15 I. & N. Dec. 611 (BIA 1976)). The BIA therefore reasoned in Franklin that, "because the statute under which the respondent was convicted requires that she acted with a 'conscious disregard of a substantial and unjustifiable risk,' the conclusion necessarily follows that she has been convicted of a crime involving moral

12

turpitude." Id. (quoting Perez-Contreras, 20 I. & N. Dec. at 619).

As we have already explained, a defendant need not consciously disregard a risk to be convicted of Virginia's involuntary manslaughter offense. See, e.g., Conrad, 521 S.E.2d at 326. Because the definition of involuntary manslaughter in Virginia is materially distinguishable from the definition of involuntary manslaughter in Missouri, the Franklin decision does not control the outcome of this matter. The IJ and the BIA failed to recognize material differences between the two definitions of involuntary manslaughter, leading them to incorrectly conclude that the Franklin decision controls the outcome here. Nor did the Franklin decision jettison the principles applied in the Perez-Contreras decision. To the contrary, the Franklin decision reaffirmed those principles but distinguished the Missouri crime then under review from the Washington offense that was at issue in the Perez-Contreras decision. See Franklin, 20 I. & N. Dec. at 870.

Crimes involving criminal negligence — like the Virginia involuntary manslaughter offense — are generally excluded from the category of crimes that involve moral turpitude. See, e.g., Rodriguez-Castro v. Gonzales, 427 F.3d 316, 323 (5th Cir. 2005) (collecting decisions and recognizing that "negligence-based crimes usually do not amount to [crimes involving moral

13

turpitude]"). There is simply no reason for us to depart from that practice here. Instead, we will adhere to the applicable rule recognized by the BIA in the Perez-Contreras decision: "Since there was no intent required for conviction, nor any conscious disregard of a substantial and unjustifiable risk, we find no moral turpitude inherent in the statute." See Perez-Contreras, 20 I. & N. Dec. at 619. Put succinctly, involuntary manslaughter under Virginia law does not categorically constitute a crime involving moral turpitude because a conviction thereof can be predicated on mere criminal negligence. We are therefore satisfied that Sotnikau is not subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).

IV.

Pursuant to the foregoing, we grant the petition for review, vacate the Final BIA Order, and remand for such other and further proceedings as may be appropriate.

PETITION FOR REVIEW GRANTED;
VACATED AND REMANDED

14