**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 17-1301**

─────────────

MARICELA LEYVA MARTINEZ, a/k/a Maricela Martinez, a/k/a Maricelo Leyva,

        Petitioner,

      v.

JEFFERSON B. SESSIONS III,

        Respondent.

------------------------------

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION; MARYLAND OFFICE OF THE PUBLIC DEFENDER; NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD; UNIVERSITY OF MARYLAND CAREY IMMIGRATION CLINIC,

        Amici Supporting Petitioner.

─────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────────

Argued: December 6, 2017                  Decided: June 15, 2018

─────────────

Before NIEMEYER, TRAXLER, and KEENAN, Circuit Judges.

─────────────

Petition for review granted; vacated and remanded by published opinion. Judge Traxler wrote the majority opinion, in which Judge Keenan joined. Judge Niemeyer wrote a dissenting opinion.

─────────────

**ARGUED:** Maureen A. Sweeney, UNIVERSITY OF MARYLAND CAREY IMMIGRATION CLINIC, Baltimore, Maryland; Adina Bassin Appelbaum, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C., for Petitioner. Sara J. Bayram, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Steven C. Planzer, CASTANEDA PLANZER LLC, Salisbury, Maryland, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Sejal Zota, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amicus National Immigration Project of the National Lawyers Guild. Claudia R. Cubas, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C., for Amicus Capital Area Immigrants' Rights Coalition. Nadine K. Wettstein, MARYLAND OFFICE OF THE PUBLIC DEFENDER, Rockville, Maryland, for Amicus Maryland Office of the Public Defender.

---

TRAXLER, Circuit Judge:

Maricela Martinez was ordered removed from the United States after the Board of Immigration Appeals ("BIA") determined that Martinez's prior convictions for theft were crimes involving moral turpitude. Because not all of the offenses encompassed under the relevant Maryland statute qualify as crimes involving moral turpitude, we grant Martinez's petition for review, vacate the BIA's decision, and remand for consideration of Martinez's application for cancellation of removal.

I.

Thirty-five-year-old Maricela Martinez is a native of Mexico; she entered the country illegally 20 years ago. She is the mother of four children, all of whom are citizens of the United States. Between 2007 and 2016, Martinez was convicted three times in Maryland for petty theft. One conviction involved theft of less than $500; the others involved thefts of less than $100 each.

After her third conviction, Martinez was arrested and detained by immigration officials, who sought to deport her because the convictions amounted to crimes involving moral turpitude ("CIMT") under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Although Martinez initially conceded removability, she later obtained counsel and contended that the theft offenses did not qualify as CIMTs and that she was entitled to apply for cancellation of removal.

An immigration judge concluded that the theft convictions qualified as CIMTs and that Martinez therefore was removable and was not entitled to seek cancellation of removal. The BIA affirmed, relying on its decision in *In re Diaz-Lizarraga*, 26 I&N Dec.

847 (BIA 2016), to conclude that the offenses were CIMTs. Martinez thereafter filed this petition for review.

## II.

Under the Immigration and Nationality Act ("INA"), a conviction for a crime involving moral turpitude renders an alien inadmissible, *see* 8 U.S.C. § 1182(a)(2)(A)(i)(I), and removable, *see id.* § 1227(a)(2)(A). Under certain circumstances, aliens who are present in the country without being legally admitted may apply for cancellation of removal and adjustment of status. *See* 8 U.S.C. § 1229b(b)(1). An alien convicted of a CIMT, however, is not eligible for cancellation of removal. *See id.* § 1229b(1)(C).

### A.

To determine whether a state offense qualifies as a CIMT, we apply the now-familiar categorical approach, which looks to the elements of the offense rather than the conduct the alien engaged in when committing the offense. *See Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017); *Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012). If all permutations of the conduct proscribed by the elements of the offense involve moral turpitude, then the offense categorically qualifies as a CIMT. "But if those elements can include behavior that does not involve moral turpitude, the crime is not categorically one involving moral turpitude." *Sotnikau*, 846 F.3d at 735.

A modification to the categorical approach applies in cases involving "divisible" statutes. A divisible statute is one that sets out alternate elements that create multiple forms of the criminal offense and at least one form of the offense qualifies -- by its

4

elements -- as the generic predicate offense. A statute that lists alternative *means* of committing a single offense, rather than alternative *elements*, is not divisible. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016); *Descamps v. United States*, 570 U.S. 254, 257 (2013). If the statute is divisible, then the modified categorical approach applies, which permits the court to consult a limited universe of documents to determine which of the various forms of the offense was the offense of conviction. But even when the modified categorical approach applies, the focus remains on the elements of the offense rather than the offender's conduct. As the Supreme Court has explained, the modified categorical approach does not permit us "to substitute . . . a facts-based inquiry for an elements-based one. A court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Descamps*, 570 U.S. at 278.

## B.

Martinez's theft convictions arise under § 7-104 of Maryland's criminal code, which consolidated multiple offenses into a single statute. Under § 7-104, various kinds of conduct are treated as theft: exerting unauthorized control over property, *see* Md. Code Ann., Crim. Law § 7-104(a); obtaining control over property through deception, *see id.* § 7-104(b); possessing stolen property, *see id.* § 7-104(c); obtaining control over lost or misdelivered property, *see id.* § 7-104(d); and obtaining services without consent or through deception, *see id.* § 7-104(e).

Although the structure of the statute might seem to suggest that it encompasses multiple separate offenses, that is not the case. Section 7-102 explains that the "[c]onduct

5

described as theft in this part constitutes a single crime and includes the separate crimes formerly known as: (1) larceny; (2) larceny by trick; (3) larceny after trust; (4) embezzlement; (5) false pretenses; (6) shoplifting; and (7) receiving stolen property." Md. Code Ann., Crim. Law § 7-102(a). And, consistent with the understanding that the statute encompasses a single offense, the Maryland Court of Appeals has explained that the jury is not required to unanimously agree on the manner in which the statute was violated. *See Rice v. State,* 532 A.2d 1357, 1361 (Md. 1987) (rejecting argument that jury was required to agree whether defendant violated the theft statute by committing larceny or by possessing stolen property: "No unanimity was to be forced upon [the jury] because there was to be no necessity to choose: either inference, whether of larceny or of possessing stolen goods, would lead to the conclusion that the defendant was guilty of theft. We thus construe Maryland's theft statute to not require the jury unanimity that appellant seeks."); *Jones v. State*, 493 A.2d 1062, 1069-70 (Md. 1985) ("Maryland's consolidated theft statute constitutes a single crime; . . . the subsections of [the statute] merely specify different acts or transactions through which theft can be proved . . . .").[1]

---

[1] Although *Rice* and *Jones* were considering an earlier version of the consolidated theft statute, there is no substantive difference between the current and previous versions of the statute, and Maryland courts continue to view the statute as creating a single offense of theft. *See, e.g.*, *Watts v. State*, ___ A.3d ___, 2018 WL 947746, at *7 (Md. Feb. 20, 2018) ("*Rice* informs our answer to the question before us. As we previously noted, the General Assembly intended for the changes to the assault statute to be in lock-step with the changes to the theft statute. Like the theft statute, nothing in the plain language of Crim. Law Art., § 3–201(b) describes battery, attempted battery, or intent to frighten as separate crimes. . . . Consistent with our interpretation of the theft statute in *Rice*, here the assault statute refers to a single crime . . . .").

Because Maryland's theft statute is not divisible, the modified categorical approach is inapplicable. The question, then, is whether *all* of the conduct prohibited by the statute, including the least culpable conduct, categorically qualifies as a CIMT.

III.

A.

Although the INA does not define "crime involving moral turpitude," the restriction is meant to "single out offenders who do more than simply the wrong inherent in violating a statute." *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 294 (4th Cir. 2018) (internal quotation marks and alteration omitted). "The term moral turpitude refers to behavior that shocks the public conscience as being inherently base, vile, or depraved. Accordingly, a crime involving moral turpitude encompasses conduct that not only violates a statute but also independently violates a moral norm." *Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017) (citations, footnote, and internal quotation marks omitted). A CIMT therefore has "two essential elements: a culpable mental state and reprehensible conduct." *Sotnikau*, 846 F.3d at 736 (internal quotation marks omitted).

The BIA has long concluded that theft offenses qualify as CIMTs if the defendant committed the offense with the intent to permanently deprive the owner of the property. *See, e.g., Matter of Grazley*, 14 I&N Dec. 330, 333 (BIA 1973) ("Ordinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended."); *Matter of P-*, 2 I&N Dec. 887, 887 (BIA 1947) (holding that the Canadian statute of conviction did not require an intent to permanently deprive the owner of the property and therefore did not involve moral turpitude). The point of the permanent-

7

deprivation requirement "was to distinguish between substantial and reprehensible deprivations of an owner's property on the one hand and, on the other, mere de minimis takings in which the owner's property rights are compromised little, if at all." *Diaz-Lizarraga*, 26 I&N Dec. at 850.

The paradigmatic example of the type of "de minimis taking" that should *not* be treated as a morally turpitudinous theft is "'joyriding' -- the nonconsensual taking of a motor vehicle with the intent to return it to the owner shortly thereafter." *Id.* If a statute punished joyriding as theft, the BIA historically declined to treat convictions under that statute as CIMTs. *See, e.g., Matter of P-*, 2 I&N Dec. at 887 (conviction for violation of Canadian statute did not render alien inadmissible because the statute "is similar to the various statutes in this country covering 'joy riding' and does not comprehend theft of automobile or intent to deprive the owner thereof permanently, and, therefore, does not involve moral turpitude").

In *Diaz-Lizarraga*, however, the BIA modified its approach to theft convictions. The BIA noted that in the decades since it first considered the issue, the law governing theft offenses had "evolved significantly." *Diaz-Lizarraga*, 26 I&N Dec. at 851.

> In most jurisdictions, legislation and judicial opinions have refined the distinction between substantial and de minimis takings to such an extent that the traditional dichotomy of permanent versus temporary takings has become anachronistic. In particular, responding to new economic and social realities, lawmakers and judges across the country have come to recognize that many temporary takings are as culpable as permanent ones.

*Id.* Given the significant change in the treatment of theft offenses, the BIA concluded "that the mere antiquity of our case law is not a sound reason for continuing to adhere to

8

it." *Id.* at 854.  The BIA therefore adopted what it described as the "mainstream, contemporary understanding of theft," *id.*, and held that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded," *id.* at 853.  The BIA made it clear, however, that "[w]e continue to believe that it is appropriate to distinguish between substantial and de minimis takings when evaluating whether theft offenses involve moral turpitude." *Id.* at 851.

B.

When determining whether Martinez's convictions qualify as CIMTs, *Chevron*'s[2] rules of deference apply to the BIA's interpretation of the statutes it administers.  *See INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25 (1999); *Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005).  Accordingly, because "crime involving moral turpitude" is not defined in the INA and its intended meaning it is not otherwise apparent, we are generally obliged to defer to the BIA's definition of that phrase.  We are not, however, obliged to defer to the BIA's conclusion that the Maryland theft offenses at issue here qualify as CIMTs:  "Whether the elements of a particular state offense are a categorical match with the elements of a [CIMT] requires an analysis of state criminal law, which does not lie within the BIA's authority or expertise." *Amos v. Lynch*, 790 F.3d 512, 518 n.5 (4th Cir. 2015).

---

[2] *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984).

Although Martinez contends that we should not defer to *Diaz-Lizarraga* and its revised definition of CIMT because the BIA abandoned decades of precedent without adequate explanation, notice, or opportunity for comment, we need not address that argument. We likewise need not consider whether *Diaz-Lizarraga* may be applied retroactively to cases involving theft offenses that were committed before *Diaz-Lizarraga* was decided and were not CIMTs under the rule then applicable, a question several circuits have answered in the negative. *See Garcia-Martinez v. Sessions*, ___ F.3d ___, 2018 WL 1702839 at *4 (9th Cir. April 9, 2018); *Obeya v. Sessions*, 884 F.3d 442, 449 (2d Cir. 2018); *Lucio-Rayos v. Sessions*, 875 F.3d 573, 578 (10th Cir. 2017). Assuming that *Diaz-Lizarraga* applies and is entitled to deference, we nonetheless conclude that Martinez's theft offenses do not qualify as CIMTs under the broader *Diaz-Lizarraga* standard.

As noted above, *Diaz-Lizarraga* holds that a theft offense is a CIMT if the offender intended "to deprive the owner of his property either permanently or under circumstances where the owner's property rights are *substantially eroded*." *Diaz-Lizarraga* 26 I&N Dec. at 853 (emphasis added). While the *Diaz-Lizarraga* standard encompasses certain "serious" temporary takings -- for example, where "property is taken 'temporarily' but returned damaged or after its value or usefulness to the owner has been vitiated," *id.* at 854, the BIA made it clear that a statute that permits a theft conviction for a de minimis, temporary taking like joyriding does not qualify as a CIMT.

We agree with Martinez that Maryland's theft statute does not "distinguish between substantial and de minimis takings" as required to qualify as a CIMT under

10

*Diaz-Lizarraga*. *Id.* at 851. Several portions of Maryland's theft statute require proof of the defendant's intent to "deprive the owner of the property." Md. Code, Crim. Law § 7-104(a)(1), (b)(1), (c)(1)(i). "Deprive" is defined as the "withhold[ing of] property of another . . . permanently [or] for a period that results in the appropriation of *a part* of the property's value." *Id.* § 7-101(c) (emphasis added). Thus, a defendant may be convicted under § 7-104 for a temporary taking that deprives the owner of *any portion* of the property's value. This standard is lower than the BIA's substantial-erosion standard, and it permits the state to obtain a theft conviction for joyriding, the paradigmatic example of a de minimis and non-morally-turpitudinous taking; if nothing else, a joyrider deprives the vehicle owner of the value of the gasoline, oil, and tire treads that are consumed during the ride. Indeed, as shown by documents attached to the brief of *Amici Curiae*, Maryland prosecuted a defendant for theft under § 7-104 after he borrowed a piece of construction equipment overnight and returned it with no damage other than scratches consistent with normal wear and tear.

Because § 7-104 permits de minimis, temporary takings like joyriding to be prosecuted as theft, the statute is overbroad and does not categorically qualify as a CIMT under the standard spelled out in *Diaz-Lizarraga*.[3] The BIA therefore erred in concluding that Martinez had been convicted of crimes involving moral turpitude. *See Lozano-Arredondo v. Sessions*, 866 F.3d 1082, 1087 n.3 (9th Cir. 2017) (concluding that

[3] Given this conclusion, we need not consider Martinez's other arguments regarding § 7-104, such as her contention that the statute does not qualify as a CIMT because it includes theft of services with nominal value, such as subway-turnstile jumping.

11

Idaho's theft statute was not a CIMT under *Diaz-Lizarraga* standard because statute "penalizes the kinds of temporary takings the BIA continues to place outside of generic theft -- statutes that encompass joyriding or other short-term takings of property" (internal quotation marks and alterations omitted)). And because the convictions do not qualify as CIMTs, Martinez is not ineligible for cancellation of removal. We therefore vacate the BIA's order and remand for consideration of Martinez's application for cancellation of removal.

IV.

We briefly address another issue raised by Martinez. When Martinez first appeared before the immigration judge, she was not represented by counsel, and she admitted the allegations of the Notice to Appear and conceded removability. Less than two weeks later, Martinez had obtained counsel and she appeared again before the immigration judge. Through counsel, Martinez sought to withdraw her concession that the theft convictions qualified as CIMTs and rendered her removable. The immigration judge denied the request, concluded that the convictions qualified as CIMTs, and denied Martinez's application for cancellation of removal. The BIA affirmed on the merits of the CIMT issue, and it expressly declined to consider Martinez's claim that the immigration judge erred by denying her request to withdraw the concession of removability.

On appeal, Martinez contends that the immigration judge erred by refusing to permit her to withdraw the concession. The immigration judge's refusal appears to have been largely based on his conclusion that the convictions qualified as CIMTs, and the

12

BIA declined to address the withdrawal issue for the same reason. Under these circumstances, we decline to consider this issue on appeal, and we leave it for the BIA to address on remand. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (explaining that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"); *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009) ("[W]hen a BIA order does not demonstrate that the agency has considered an issue, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (internal quotation marks omitted)).

V.

For the foregoing reasons, we conclude that Maryland's consolidated theft statute does not categorically qualify as a crime involving moral turpitude for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I). We therefore grant the petition for review, vacate the BIA's order, and remand for consideration of Martinez's request to withdraw her uncounseled concession of removability and her application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1).

PETITION FOR REVIEW GRANTED;
VACATED AND REMANDED

13

NIEMEYER, Circuit Judge, dissenting:

The Immigration Judge's order removing Maricela Martinez to Mexico was based on Martinez's three convictions for theft in violation of Maryland Code, Criminal Law § 7-104. The Immigration Judge concluded that Maryland's theft offense categorically qualifies as a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I), thereby rendering Martinez ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C). The Board of Immigration Appeals ("BIA") affirmed.

The majority vacates the BIA's decision, concluding that § 7-104 allows for a conviction based on "joyriding" and that it therefore does not categorically qualify as a "crime involving moral turpitude" under the BIA precedent interpreting that term. In reaching this conclusion, the majority speculates, without the benefit of any Maryland case law, that the Maryland theft law could, by its terms, be applied to punish joyriding as the theft of an automobile. This approach, however, violates the Supreme Court's standard for applying the categorical approach.

The applicable statute denies relief from an order of removal when the alien has been "convicted of . . . a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I); *id*. § 1229b(b)(1)(c). In the abstract, crimes involving moral turpitude "encompass[] 'conduct that not only violates a statute but also independently violates a moral norm.'" *Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017) (quoting *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014)). The BIA has concluded, as relevant here, that a theft offense is a crime of moral turpitude if the offender must have intended "to deprive the owner of his property either permanently or under circumstances

14

where the owner's property rights are substantially eroded." *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847, 853 (BIA 2016). It explained, "We continue to believe that it is appropriate to distinguish between substantial and de minimis takings when evaluating whether theft offenses involve moral turpitude." *Id*. at 851. But by "de minimis takings," the BIA was not referring to the stealing of property with a de minimis value. Rather, in pointing to examples of takings that are de minimis and do not involve moral turpitude, the BIA referred to "joyriding or 'borrowing' a Victrola [record player] or ring for a short-term use at a party," *id*. at 854, all instances in which the offender takes property "with the intent to return it to the owner shortly thereafter" and thus without an intent to substantially compromise the owner's rights in that property, *id*. at 850.

We apply § 1182(a)(2)(A)(i)(I), as reasonably construed by the BIA, categorically, determining whether the Maryland state offense under which Martinez was convicted categorically fits the BIA's definition of a theft crime of moral turpitude. *See Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017). In applying the categorical approach, the Supreme Court instructs:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to the state statute's language. *It requires a realistic probability, not a theoretical possibility*, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. *But he must at least point to his own case or other cases in which the state courts in fact did apply the statute* in the special (non-generic) manner for which he argues.

*Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (emphasis added); *see also Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (explaining that the categorical

15

approach's "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense"). Thus, under this standard, we must determine whether there is a "realistic probability" — as distinguished from a "theoretical possibility" — that Maryland courts would allow joyriding-type offenses to support a conviction under § 7-104 so as to make the Maryland theft statute broader than generic theft involving moral turpitude. And such a realistic probability is shown by referring to cases supporting Martinez's position.

It is readily apparent that neither the majority nor Martinez has conducted the necessary analysis. The Maryland theft statute — § 7-104 — prohibits "willfully or knowingly obtain[ing] or exert[ing] unauthorized control over property" with the intent to "deprive the owner of the property," Md. Code Ann., Crim. Law § 7-104(a)(1), and the term "deprive" is defined, as relevant here, as the "withhold[ing] [of] property of another . . . [either] permanently [or] for a period that results in the appropriation of a part of the property's value," *id*. § 7-101(c)(1)-(2). Maryland courts thus hold that a defendant who knowingly exercises unauthorized control over another's property with the intent to withhold the property for a period "long enough to appropriate a portion of" the property's value is guilty of violating § 7-104. *In re Lakeysha P.*, 665 A.2d 264, 276 (Md. Ct. Spec. App. 1995) (interpreting nearly identical predecessor statute). And critically, for present purposes, the *Lakeysha P.* court explained, "It is clear that [the] definition of 'deprive' [as including the 'withhold[ing] [of] property of another . . . [f]or such a period as to appropriate a portion of its value'] *does not embrace every unauthorized use of another's property, no matter how minimal or how brief*" because,

16

"[i]f that were the case, what is now the crime of Unauthorized Use would be subsumed into the consolidated crime of Theft." *Id.* (emphasis added). Indeed, a major premise underlying *Lakeysha P.*'s analysis was that facts consistent with mere joyriding would *not* be sufficient to support a conviction for the *theft* of that automobile. *See id.* at 265.

Despite this, the majority nonetheless speculates that § 7-104 would treat joyriding as automobile theft because a joyrider intentionally "deprives the vehicle owner of the value of the gasoline, oil, and tire treads that are consumed during the ride." *Ante* at 11. But, to be clear, the BIA has never said that the theft of even relatively small amounts of "gasoline, oil, and tire treads" is not morally turpitudinous. *See, e.g.*, *Matter of Scarpulla*, 15 I&N Dec. 139, 140–41 (BIA 1974) (noting that it is "well settled" that petty theft involves moral turpitude). Rather, what it has specified is that a theft statute that allows joyriding to be punished as *automobile theft* cannot qualify as a crime involving moral turpitude because the intended deprivation involved in joyriding does not substantially compromise the owner's property rights *in the vehicle*. *See Diaz-Lizarraga*, 26 I&N Dec. at 850–51. And, here, the majority has done no more than speculate — based on its reading of § 7-101(c) and contrary to the analysis provided in *Lakeysha P.* — that joyriding would be punished as the theft of a vehicle under § 7-104. This is precisely the type of "application of legal imagination to a state statute's language" that *Duenas-Alvarez* prohibits when conducting the categorical approach. 549 U.S. at 193.

Moreover, neither the majority nor Martinez has cited to *any case* where a Maryland court has applied § 7-104 to joyriding-type conduct. The best that the majority can do is identify an instance where an individual was *charged* with theft under § 7-104

17

for unauthorized borrowing of property resulting in normal wear and tear. *See ante* at 11. But the existence of such a charge does not amount to case law and is nothing more than the "theoretical possibility" that *Duenas-Alvarez* instructs is insufficient. 549 U.S. at 193. The Supreme Court has made clear that Martinez "*must at least* point to . . . cases in which the state courts in fact did apply the statute" to cover a de minimis, temporary taking. *Id.* (emphasis added). Because Martinez and the majority have not shown that there is such a case and therefore a "realistic probability" that Maryland courts would apply § 7-104 to "de minimis, temporary takings like joyriding," *ante* at 11, they fail in their argument that § 7-104 does not qualify as a crime involving moral turpitude.

The BIA held in this case that "MD Code, Criminal Law § 7-104 categorically matches the generic definition of a [crime involving moral turpitude] because, viewed in conjunction with the definition of 'deprive' at MD Code, Criminal Law § 7-101(c), the statute necessarily requires the perpetrator to either engage in fraud or deception, or withhold at least some of the rights and benefits of ownership from the victim with a culpable mental state," citing *Diaz-Lizarraga*. I agree and therefore would affirm the BIA's decision.