TRAXLER, Circuit Judge:
*658 Maricela Martinez was ordered removed from the United States after the Board of Immigration Appeals ("BIA") determined that Martinez's prior convictions for theft were crimes involving moral turpitude. Because not all of the offenses encompassed under the relevant Maryland statute qualify as crimes involving moral turpitude, we grant Martinez's petition for review, vacate the BIA's decision, and remand for consideration of Martinez's application for cancellation of removal.
I.
Thirty-five-year-old Maricela Martinez is a native of Mexico; she entered the country illegally 20 years ago. She is the mother of four children, all of whom are citizens of the United States. Between 2007 and 2016, Martinez was convicted three times in Maryland for petty theft. One conviction involved theft of less than $500; the others involved thefts of less than $100 each.
After her third conviction, Martinez was arrested and detained by immigration officials, who sought to deport her because the convictions amounted to crimes involving moral turpitude ("CIMT") under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Although Martinez initially conceded removability, she later obtained counsel and contended that the theft offenses did not qualify as CIMTs and that she was entitled to apply for cancellation of removal.
An immigration judge concluded that the theft convictions qualified as CIMTs and that Martinez therefore was removable and was not entitled to seek cancellation of removal. The BIA affirmed, relying on its decision in In re Diaz-Lizarraga , 26 I&N Dec. 847 (BIA 2016), to conclude that the offenses were CIMTs. Martinez thereafter filed this petition for review.
II.
Under the Immigration and Nationality Act ("INA"), a conviction for a crime involving moral turpitude renders an alien inadmissible, see 8 U.S.C. § 1182(a)(2)(A)(i)(I), and removable, see id. § 1227(a)(2)(A). Under certain circumstances, aliens who are present in the country without being legally admitted may apply for cancellation of removal and adjustment of status. See 8 U.S.C. § 1229b(b)(1). An alien convicted of a CIMT, however, is not eligible for cancellation of removal. See id. § 1229b(1)(C).
A.
To determine whether a state offense qualifies as a CIMT, we apply the now-familiar categorical approach, which looks to the elements of the offense rather than the conduct the alien engaged in when committing the offense. See Sotnikau v. Lynch , 846 F.3d 731, 735 (4th Cir. 2017) ; Prudencio v. Holder , 669 F.3d 472, 484 (4th Cir. 2012). If all permutations of the conduct proscribed by the elements of the offense involve moral turpitude, then the offense categorically qualifies as a CIMT. "But if those elements can include behavior that does not involve moral turpitude, the crime is not categorically one *659 involving moral turpitude." Sotnikau , 846 F.3d at 735.
A modification to the categorical approach applies in cases involving "divisible" statutes. A divisible statute is one that sets out alternate elements that create multiple forms of the criminal offense and at least one form of the offense qualifies-by its elements-as the generic predicate offense. A statute that lists alternative means of committing a single offense, rather than alternative elements , is not divisible. See Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 2256, 195 L.Ed.2d 604 (2016) ; Descamps v. United States , 570 U.S. 254, 257, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). If the statute is divisible, then the modified categorical approach applies, which permits the court to consult a limited universe of documents to determine which of the various forms of the offense was the offense of conviction. But even when the modified categorical approach applies, the focus remains on the elements of the offense rather than the offender's conduct. As the Supreme Court has explained, the modified categorical approach does not permit us "to substitute ... a facts-based inquiry for an elements-based one. A court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." Descamps , 570 U.S. at 278, 133 S.Ct. 2276.
B.
Martinez's theft convictions arise under § 7-104 of Maryland's criminal code, which consolidated multiple offenses into a single statute. Under § 7-104, various kinds of conduct are treated as theft: exerting unauthorized control over property, see Md. Code Ann., Crim. Law § 7-104(a) ; obtaining control over property through deception, see id. § 7-104(b) ; possessing stolen property, see id. § 7-104(c) ; obtaining control over lost or misdelivered property, see id. § 7-104(d) ; and obtaining services without consent or through deception, see id. § 7-104(e).
Although the structure of the statute might seem to suggest that it encompasses multiple separate offenses, that is not the case. Section 7-102 explains that the "[c]onduct described as theft in this part constitutes a single crime and includes the separate crimes formerly known as: (1) larceny; (2) larceny by trick; (3) larceny after trust; (4) embezzlement; (5) false pretenses; (6) shoplifting; and (7) receiving stolen property." Md. Code Ann., Crim. Law § 7-102(a). And, consistent with the understanding that the statute encompasses a single offense, the Maryland Court of Appeals has explained that the jury is not required to unanimously agree on the manner in which the statute was violated. See Rice v. State, 311 Md. 116, 532 A.2d 1357, 1361 (1987) (rejecting argument that jury was required to agree whether defendant violated the theft statute by committing larceny or by possessing stolen property: "No unanimity was to be forced upon [the jury] because there was to be no necessity to choose: either inference, whether of larceny or of possessing stolen goods, would lead to the conclusion that the defendant was guilty of theft. We thus construe Maryland's theft statute to not require the jury unanimity that appellant seeks."); Jones v. State , 303 Md. 323, 493 A.2d 1062, 1069-70 (1985) ("Maryland's consolidated theft statute constitutes a single crime; ... the subsections of [the statute] merely specify different acts or transactions through which theft can be proved ....").[1]
*660 Because Maryland's theft statute is not divisible, the modified categorical approach is inapplicable. The question, then, is whether all of the conduct prohibited by the statute, including the least culpable conduct, categorically qualifies as a CIMT.
III.
A.
Although the INA does not define "crime involving moral turpitude," the restriction is meant to "single out offenders who do more than simply the wrong inherent in violating a statute." Jimenez-Cedillo v. Sessions , 885 F.3d 292, 294 (4th Cir. 2018) (internal quotation marks and alteration omitted). "The term moral turpitude refers to behavior that shocks the public conscience as being inherently base, vile, or depraved. Accordingly, a crime involving moral turpitude encompasses conduct that not only violates a statute but also independently violates a moral norm." Uribe v. Sessions , 855 F.3d 622, 625 (4th Cir. 2017) (citations, footnote, and internal quotation marks omitted). A CIMT therefore has "two essential elements: a culpable mental state and reprehensible conduct." Sotnikau , 846 F.3d at 736 (internal quotation marks omitted).
The BIA has long concluded that theft offenses qualify as CIMTs if the defendant committed the offense with the intent to permanently deprive the owner of the property. See, e.g., Matter of Grazley , 14 I&N Dec. 330, 333 (BIA 1973) ("Ordinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended."); Matter of P- , 2 I&N Dec. 887, 887 (BIA 1947) (holding that the Canadian statute of conviction did not require an intent to permanently deprive the owner of the property and therefore did not involve moral turpitude). The point of the permanent-deprivation requirement "was to distinguish between substantial and reprehensible deprivations of an owner's property on the one hand and, on the other, mere de minimis takings in which the owner's property rights are compromised little, if at all." Diaz-Lizarraga , 26 I&N Dec. at 850.
The paradigmatic example of the type of "de minimis taking" that should not be treated as a morally turpitudinous theft is " 'joyriding'-the nonconsensual taking of a motor vehicle with the intent to return it to the owner shortly thereafter." Id. If a statute punished joyriding as theft, the BIA historically declined to treat convictions under that statute as CIMTs. See, e.g., Matter of P- , 2 I&N Dec. at 887 (conviction for violation of Canadian statute did not render alien inadmissible because the statute "is similar to the various statutes in this country covering 'joy riding' and does not comprehend theft of automobile or intent to deprive the owner thereof permanently, and, therefore, does not involve moral turpitude").
In Diaz-Lizarraga , however, the BIA modified its approach to theft convictions. The BIA noted that in the decades since it first considered the issue, the law governing theft offenses had "evolved significantly." Diaz-Lizarraga , 26 I&N Dec. at 851.
*661 In most jurisdictions, legislation and judicial opinions have refined the distinction between substantial and de minimis takings to such an extent that the traditional dichotomy of permanent versus temporary takings has become anachronistic. In particular, responding to new economic and social realities, lawmakers and judges across the country have come to recognize that many temporary takings are as culpable as permanent ones.
Id. Given the significant change in the treatment of theft offenses, the BIA concluded "that the mere antiquity of our case law is not a sound reason for continuing to adhere to it." Id. at 854. The BIA therefore adopted what it described as the "mainstream, contemporary understanding of theft," id. , and held that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded," id. at 853. The BIA made it clear, however, that "[w]e continue to believe that it is appropriate to distinguish between substantial and de minimis takings when evaluating whether theft offenses involve moral turpitude." Id. at 851.
B.
When determining whether Martinez's convictions qualify as CIMTs, Chevron 's[2] rules of deference apply to the BIA's interpretation of the statutes it administers. See INS v. Aguirre-Aguirre , 526 U.S. 415, 424-25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) ; Soliman v. Gonzales , 419 F.3d 276, 281 (4th Cir. 2005). Accordingly, because "crime involving moral turpitude" is not defined in the INA and its intended meaning it is not otherwise apparent, we are generally obliged to defer to the BIA's definition of that phrase. We are not, however, obliged to defer to the BIA's conclusion that the Maryland theft offenses at issue here qualify as CIMTs: "Whether the elements of a particular state offense are a categorical match with the elements of a [CIMT] requires an analysis of state criminal law, which does not lie within the BIA's authority or expertise." Amos v. Lynch , 790 F.3d 512, 518 n.5 (4th Cir. 2015).
Although Martinez contends that we should not defer to Diaz-Lizarraga and its revised definition of CIMT because the BIA abandoned decades of precedent without adequate explanation, notice, or opportunity for comment, we need not address that argument. We likewise need not consider whether Diaz-Lizarraga may be applied retroactively to cases involving theft offenses that were committed before Diaz-Lizarraga was decided and were not CIMTs under the rule then applicable, a question several circuits have answered in the negative. See Garcia-Martinez v. Sessions , 886 F.3d 1291, 1295-96 (9th Cir. 2018) ; Obeya v. Sessions , 884 F.3d 442, 449 (2d Cir. 2018) ; Lucio-Rayos v. Sessions , 875 F.3d 573, 578 (10th Cir. 2017). Assuming that Diaz-Lizarraga applies and is entitled to deference, we nonetheless conclude that Martinez's theft offenses do not qualify as CIMTs under the broader Diaz-Lizarraga standard.
As noted above, Diaz-Lizarraga holds that a theft offense is a CIMT if the offender intended "to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded ."
*662 Diaz-Lizarraga 26 I&N Dec. at 853 (emphasis added). While the Diaz-Lizarraga standard encompasses certain "serious" temporary takings-for example, where "property is taken 'temporarily' but returned damaged or after its value or usefulness to the owner has been vitiated," id. at 854, the BIA made it clear that a statute that permits a theft conviction for a de minimis, temporary taking like joyriding does not qualify as a CIMT.
We agree with Martinez that Maryland's theft statute does not "distinguish between substantial and de minimis takings" as required to qualify as a CIMT under Diaz-Lizarraga . Id. at 851. Several portions of Maryland's theft statute require proof of the defendant's intent to "deprive the owner of the property." Md. Code, Crim. Law § 7-104(a)(1), (b)(1), (c)(1)(i). "Deprive" is defined as the "withhold[ing of] property of another ... permanently [or] for a period that results in the appropriation of a part of the property's value." Id. § 7-101(c) (emphasis added). Thus, a defendant may be convicted under § 7-104 for a temporary taking that deprives the owner of any portion of the property's value. This standard is lower than the BIA's substantial-erosion standard, and it permits the state to obtain a theft conviction for joyriding, the paradigmatic example of a de minimis and non-morally-turpitudinous taking; if nothing else, a joyrider deprives the vehicle owner of the value of the gasoline, oil, and tire treads that are consumed during the ride. Indeed, as shown by documents attached to the brief of Amici Curiae , Maryland prosecuted a defendant for theft under § 7-104 after he borrowed a piece of construction equipment overnight and returned it with no damage other than scratches consistent with normal wear and tear.
Because § 7-104 permits de minimis, temporary takings like joyriding to be prosecuted as theft, the statute is overbroad and does not categorically qualify as a CIMT under the standard spelled out in Diaz-Lizarraga .[3] The BIA therefore erred in concluding that Martinez had been convicted of crimes involving moral turpitude. See Lozano-Arredondo v. Sessions , 866 F.3d 1082, 1087 n.3 (9th Cir. 2017) (concluding that Idaho's theft statute was not a CIMT under Diaz-Lizarraga standard because statute "penalizes the kinds of temporary takings the BIA continues to place outside of generic theft-statutes that encompass joyriding or other short-term takings of property" (internal quotation marks and alterations omitted) ). And because the convictions do not qualify as CIMTs, Martinez is not ineligible for cancellation of removal. We therefore vacate the BIA's order and remand for consideration of Martinez's application for cancellation of removal.
IV.
We briefly address another issue raised by Martinez. When Martinez first appeared before the immigration judge, she was not represented by counsel, and she admitted the allegations of the Notice to Appear and conceded removability. Less than two weeks later, Martinez had obtained counsel and she appeared again before the immigration judge. Through counsel, Martinez sought to withdraw her concession that the theft convictions qualified as CIMTs and rendered her removable. The immigration judge denied the request, concluded that the convictions qualified as CIMTs, and denied Martinez's *663 application for cancellation of removal. The BIA affirmed on the merits of the CIMT issue, and it expressly declined to consider Martinez's claim that the immigration judge erred by denying her request to withdraw the concession of removability.
On appeal, Martinez contends that the immigration judge erred by refusing to permit her to withdraw the concession. The immigration judge's refusal appears to have been largely based on his conclusion that the convictions qualified as CIMTs, and the BIA declined to address the withdrawal issue for the same reason. Under these circumstances, we decline to consider this issue on appeal, and we leave it for the BIA to address on remand. See SEC v. Chenery Corp. , 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (explaining that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"); Nken v. Holder , 585 F.3d 818, 822 (4th Cir. 2009) ("[W]hen a BIA order does not demonstrate that the agency has considered an issue, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (internal quotation marks omitted) ).
V.
For the foregoing reasons, we conclude that Maryland's consolidated theft statute does not categorically qualify as a crime involving moral turpitude for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I). We therefore grant the petition for review, vacate the BIA's order, and remand for consideration of Martinez's request to withdraw her uncounseled concession of removability and her application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1).
PETITION FOR REVIEW GRANTED; VACATED AND REMANDED

Although Rice and Jones were considering an earlier version of the consolidated theft statute, there is no substantive difference between the current and previous versions of the statute, and Maryland courts continue to view the statute as creating a single offense of theft. See, e.g. , Watts v. State , 457 Md. 419, 433-34, 179 A.3d 929 (2018) ("Rice informs our answer to the question before us. As we previously noted, the General Assembly intended for the changes to the assault statute to be in lock-step with the changes to the theft statute. Like the theft statute, nothing in the plain language of Crim. Law Art., § 3-201(b) describes battery, attempted battery, or intent to frighten as separate crimes. ... Consistent with our interpretation of the theft statute in Rice , here the assault statute refers to a single crime ....").

Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Given this conclusion, we need not consider Martinez's other arguments regarding § 7-104, such as her contention that the statute does not qualify as a CIMT because it includes theft of services with nominal value, such as subway-turnstile jumping.