**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1477**

PEDRO JOSUE JIMENEZ-CEDILLO,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

**No. 17-1893**

PEDRO JOSUE JIMENEZ-CEDILLO,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 23, 2018                    Decided: March 20, 2018

Before THACKER and HARRIS, Circuit Judges, and SHEDD, Senior Circuit Judge.

Petition for review granted and remanded for further proceedings by published opinion. Judge Harris wrote the opinion, in which Judge Thacker and Judge Shedd joined.

————————————

**ARGUED:** Benjamin Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Karen L. Melnik, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Helen L. Parsonage, ELLIOT MORGAN PARSONAGE PLLC, Winston-Salem, North Carolina, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Civil Division, Briena L. Strippoli, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

————————————

PAMELA HARRIS, Circuit Judge:

Pedro Josue Jimenez-Cedillo, a native and citizen of Mexico, was ordered removed from the United States after the Board of Immigration Appeals determined that sexual solicitation of a minor in Maryland, to which Jimenez-Cedillo pled guilty, is a crime involving moral turpitude. Under Maryland law, sexual solicitation of a minor does not require that the perpetrator know the victim's age. And before this case, under Board of Immigration Appeals precedent, a sexual offense against a child categorically involved moral turpitude only if the perpetrator knew or should have known that the victim was a minor. Because the Board failed to explain its change in position, we grant Jimenez-Cedillo's petition for review and remand for further proceedings.

## I.

### A.

Because our decision turns on the development of Board of Immigration Appeals precedent, we begin by laying out in some detail the statutory and regulatory framework that governs this case.

Under the Immigration and Nationality Act ("INA"), an alien convicted of a "crime involving moral turpitude" generally is inadmissible, 8 U.S.C. § 1182(a)(2)(A)(i)(I); removable, *id.* § 1227(a)(2)(A)(i)–(ii); and ineligible for cancellation of removal and adjustment of status, *id.* § 1229b(b)(1)(C). In limiting these consequences to convictions for crimes "involving moral turpitude," Congress intended to single out offenders who do more than "simply the wrong inherent in violating [a]

3

statute." *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014). To qualify as a crime involving moral turpitude, an offense "must involve conduct that not only violates a statute but also independently violates a moral norm." *Id.* Thus, a crime involving moral turpitude contains "two essential elements: a culpable mental state and reprehensible conduct." *Sotnikau v. Lynch*, 846 F.3d 731, 736 (4th Cir. 2017) (quoting *Matter of Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (B.I.A. 2013)).

The Board of Immigration Appeals ("Board") has long held that a crime involves moral turpitude only if it requires a culpable mental state. But it has been less clear exactly how that rule applies to sexual offenses against minors, and specifically, whether mental culpability is required as to the age of the victim. In 2008, Attorney General Mukasey resolved that question in *Matter of Silva-Trevino* ("*Silva-Trevino I*"), a lengthy opinion establishing a "uniform framework" for applying the INA's moral turpitude provisions. 24 I. & N. Dec. 687, 688 (A.G. 2008).

According to *Silva-Trevino I*, sexual offenses against minors qualify as crimes involving moral turpitude if they require not only "reprehensible conduct," but also "some degree of scienter, whether specific intent, deliberateness, willfulness, or recklessness." *Id.* at 689 n.1; *see also id.* at 706–07 & n.5. That means, the Attorney General explained, that offenses should be treated as crimes involving moral turpitude when they are "limit[ed] . . . to defendants who knew, or reasonably should have known, that their intentional sexual acts were directed at children." *Id.* at 707. Requiring qualifying statutes to have a "mistake-of-age" defense – that a defendant reasonably believed his or her victim was not a child – "ensures that individuals will be convicted [of

4

a crime involving moral turpitude] only if they willfully or knowingly directed sexual conduct towards someone they knew, or reasonably should have known, was a child." *Id.*; *see also id.* at 705–06 (rejecting Board's suggestion that moral turpitude turns on "severity of the sexual contact at issue" and finding that mental culpability with respect to victim's age is "critical factor"). Even statutory rape convictions, the Attorney General elaborated, would not categorically involve moral turpitude if the relevant statute did not allow for a mistake-of-age defense. *Id.* at 707 n.6.

The Attorney General thoroughly explained the reasoning that led to this result. First, the rule announced in *Silva-Trevino I* was consistent with the weight of Board and federal court precedent, serving as a "rearticulat[ion] with greater clarity" of a mental culpability requirement already being applied in most cases. *Id.* at 689 n.1; *see also id.* at 706–07 & n.5. Second, that requirement "faithfully implements the [INA's] distinction between crimes involving moral turpitude . . . and criminal conduct generally," ensuring that violation of a criminal statute is not by itself deemed sufficient to show moral turpitude. *Id.* at 689 n.1; *see also id.* at 706. And finally, uniform application of the INA's moral turpitude provision would provide aliens with "clearer notice of which criminal convictions will trigger certain immigration consequences." *Id.* at 689 n.1.

*Silva-Trevino I* also announced a second holding: If an offense did not qualify as a crime involving moral turpitude as a categorical matter – that is, if the statute's elements alone did not require the necessary culpable mental state and reprehensible conduct – then an immigration judge ("IJ") could undertake a "modified categorical" inquiry, examining evidence outside the record of conviction to determine whether the

5

underlying conviction in fact was for conduct involving moral turpitude. *Id.* at 690, 708–09, 707 n.6. Not long after *Silva-Trevino I*, however, this court, along with others, held to the contrary, concluding that the INA unambiguously requires that "an adjudicator consider only the conviction itself, and not any underlying conduct," in determining whether a crime qualifies as one involving moral turpitude. *Prudencio v. Holder*, 669 F.3d 472, 482 (4th Cir. 2012).

The Attorney General (now Attorney General Holder) responded to those court decisions by vacating *Silva-Trevino I* in its entirety. *Matter of Silva-Trevino*, 26 I. & N. Dec. 550, 553 (A.G. 2015) ("*Silva-Trevino II*"). But *Silva-Trevino II* made clear that it was not disapproving all aspects of *Silva-Trevino I*. *Id.* Instead, *Silva-Trevino II* clarified that *Silva-Trevino I*'s culpable mental state requirement remained appropriate, and that the Attorney General's decision did not "affect Board determinations that an offense entails or does not entail 'reprehensible conduct and some form of scienter' and is or is not a crime involving moral turpitude for that reason." *Id.* at 553 n.3 (citing *Silva-Trevino I* and Board cases applying *Silva-Trevino I*).

Finally, when the case again was remanded to the Board, the Board reaffirmed *Silva-Trevino I*'s essential holding, "find[ing] no reason to deviate" from the rule that "a crime involving intentional sexual conduct by an adult with a child involves moral turpitude as long as the perpetrator knew or should have known that the victim was a minor." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (B.I.A. 2016) ("*Silva-Trevino III*"). Accordingly, the Board held that the Texas offense of which Silva-Trevino was convicted, prohibiting the sexual touching of a child, was not categorically a crime

6

involving moral turpitude because it did not require proof that the defendant knew or should have known of the victim's age. *Id.* at 835. In a footnote, however, the Board "reserve[d] the question" whether "crimes commonly known as 'statutory rape'" – "a distinct category of crimes that require the penetration of the child or similar conduct" – might qualify as crimes involving moral turpitude even when they "do not require a perpetrator to have knowledge of the age of the victim." *Id.* at 834 n.9.

**B.**

In February 2015, while *Silva-Trevino I* was in effect, Jimenez-Cedillo pled guilty to sexually soliciting a minor in violation of Maryland law. *See* Md. Code Ann., Crim. Law § 3-324 (prohibiting solicitation of a minor with intent to engage in sexual acts that would be unlawful under Md. Code Ann., Crim. Law § 3-307); *id.* § 3-307 (prohibiting, *inter alia*, sexual contact with a person under age 14 if the perpetrator is at least four years older). There is no dispute about the elements of the offense: A defendant may be convicted without proof that he knew or should have known that the person solicited was not of legal age. *See id.*; *Att'y Grievance Comm'n v. Greenleaf*, 91 A.3d 1066, 1071 n.9 (Md. 2014); *Choudry v. State*, 153 A.3d 895, 898 (Md. Ct. Spec. App. 2017).

The Department of Homeland Security charged Jimenez-Cedillo with removability on the ground that he was present in the United States without being admitted, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and also on the ground that he had been convicted of a crime involving moral turpitude, *see id.* § 1182(a)(2)(A)(i)(I). Jimenez-Cedillo conceded the

7

first charge, but denied that his Maryland conviction was for a crime involving moral turpitude.[1] The IJ ruled against Jimenez-Cedillo, and Jimenez-Cedillo appealed.

The Board dismissed Jimenez-Cedillo's appeal in a precedential decision, holding that Maryland's sexual solicitation of a minor offense qualifies categorically as a crime involving moral turpitude. The Board acknowledged that a defendant could be convicted of the offense "even if there was a reasonable mistake as to the victim's age." *Matter of Jimenez-Cedillo*, 27 I. & N. Dec. 1, 4 (B.I.A. 2017). But, the Board reasoned, it had "yet to decide whether sexual crimes that do not require a perpetrator to possess a culpable mental state with respect to the age of the victim are crimes involving moral turpitude." *Id.* As authority, the Board cited footnote nine of *Silva-Trevino III*, regarding statutory rape, and explained that it had not "foreclose[d] the possibility that moral turpitude will inhere in some crimes, even if the relevant statute lacks an element that requires the perpetrator to have some culpable mental state regarding the victim's age." *Id.* at 4–5. "[C]larify[ing]" *Silva-Trevino III*, the Board went on to hold that statutes criminalizing sexual offenses against children are crimes involving moral turpitude regardless of whether they require a culpable mental state as to the child's age, so long as "the victim is particularly young" or "the age differential between the perpetrator and victim is significant." *Id.* at 5. Because the Maryland offense in question meets that standard –

---

[1] The distinction matters because aliens present without being admitted, but not aliens convicted of crimes involving moral turpitude, may apply for cancellation of removal and adjustment of status if they meet certain qualifications. *See* 8 U.S.C. § 1229b(b)(1). Jimenez-Cedillo, for instance, wishes to seek cancellation of removal based on the hardship that would befall his United States citizen wife.

criminalizing sexual contact between a victim under 14 and a perpetrator four years older – the Board concluded that it "categorically fits within the generic definition of a crime involving moral turpitude." *Id.* at 6.

Jimenez-Cedillo moved for reconsideration, and the Board denied his motion. The Board again rejected the argument that sexual solicitation of a minor under Maryland law does not categorically involve moral turpitude because it does not require mental culpability as to the age of the victim. In the alternative, Jimenez-Cedillo argued that Maryland's offense also fails to satisfy the "reprehensibility" standard for crimes involving moral turpitude, because it reaches conduct so relatively non-severe – for instance, a 17-year old touching the clothed buttocks of a 13-year old, *see Bible v. State*, 982 A.2d 348, 358–59 (Md. 2009) (holding that statute reaches touching of clothed buttocks) – that it is not even criminalized in some states. The Board rejected that argument, too, characterizing it as a matter of "differences in line drawing" and defending its decision to draw a line at age 14. A.R. 4.

Jimenez-Cedillo timely petitioned this court for review.

## II.

Jimenez-Cedillo argues that the Board's primary error is its failure to explain why it abandoned the *Silva-Trevino* rule that an offense must require proof of a culpable

9

mental state as to the victim's age in order to qualify as a crime involving moral turpitude. We agree.[2]

"One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). An agency can satisfy that requirement by providing an explanation with enough clarity that its "path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). So long as the agency "provide[s] an explanation of its decision that includes a rational connection between the facts found and the choice made," we will uphold its decision. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars*, 136 S. Ct. at 2125 (citing *State Farm*, 463 U.S. at 42–43).

The same principles apply to a change in agency position. An agency is not, of course, permanently bound by the first reasoned decision it makes. To the contrary, "[a]gencies are free to change their existing policies" – but in doing so, they must "provide a reasoned explanation for the change." *Id.* At a minimum, an agency must "display awareness that it is changing position and show that there are good reasons for

---

[2] In light of this holding, we do not reach Jimenez-Cedillo's alternative argument that the least culpable conduct criminalized under Maryland's sexual solicitation of a minor statute is not sufficiently reprehensible to qualify as a crime involving moral turpitude.

10

the new policy." *Id.* at 2126 (internal quotation marks omitted). "In explaining its changed position, an agency must also be cognizant that long-standing policies may have engendered serious reliance interests that must be taken into account." *Id.* (internal quotation marks omitted). An "unexplained inconsistency" in agency policy indicates that the agency's action is arbitrary and capricious, and therefore unlawful. *Id.* (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

The government does not dispute these well-established legal principles. Nor does it argue that the Board has complied with the requirement that it acknowledge and explain any change in agency position. Instead, the government takes the view that there is no change to be explained – that the Board never took a position contrary to the one it announced and applied in this case. We cannot agree.

From *Silva-Trevino I* through *Silva-Trevino III*, the Board was clear and consistent on the fundamental point at issue: "[A] crime involving intentional sexual conduct by an adult with a child involves moral turpitude as long as the perpetrator knew or should have known that the victim was a minor." *Silva-Trevino III*, 26 I. & N. Dec. at 834. In *Silva-Trevino I*, the Attorney General, thoroughly explaining his reasoning, rejected the view that the moral turpitude inquiry should turn on the severity of the conduct in question and insisted that what was critical was "whether the perpetrator knew or should have known the victim's age." 24 I. & N. Dec. at 706. The requirement of mental culpability as to age, the Attorney General made clear, applied to all sexual offenses against children, including statutory rape. *See id.* at 707 n.6. *Silva-Trevino II*, though it vacated *Silva-Trevino I* on other grounds, did not "disapprove" of that aspect of the prior decision,

11

specifically disclaiming any intent to affect Board determinations applying *Silva-Trevino I*'s mental culpability requirement. 26 I. & N. Dec. at 553 & n.3. And soon after, *Silva-Trevino III* expressly reaffirmed the rule requiring mental culpability as to age, finding "no reason to deviate" from *Silva-Trevino I*'s holding on that question. 26 I. & N. Dec. at 834. Whatever the merits of the position taken by the Board in this case – that mental culpability as to age is *not* required before a law prohibiting the sexual touching of a minor may be deemed a crime involving moral turpitude – it seems clear that it is a new one.

The government's argument to the contrary rests on footnote nine of *Silva-Trevino III*, in which the Board "reserve[d] the question" whether "crimes commonly known as 'statutory rape'" – a "distinct category of crimes that require the penetration of the child or similar conduct" – may be treated as crimes involving moral turpitude even if they do not require a culpable mental state as to the age of the victim. *Id.* at 834 n.9. The government does not dispute that the Maryland statute under which Jimenez-Cedillo was convicted reaches well beyond statutory rape. *See* Md. Code Ann., Crim. Law § 3-307 (encompassing any "sexual contact" with a person under the age of 14 if the perpetrator is at least four years older); *Bible*, 982 A.2d at 358–59 (holding that touching of clothed buttocks is prohibited "sexual contact"). Instead, the government insists that when *Silva-Trevino III* says "crimes commonly known as 'statutory rape,'" what it means is not "crimes commonly known as 'statutory rape'" but rather "all strict liability offenses involving young children or significant age disparities between perpetrators and minor victims." That reading simply cannot be reconciled with the text of *Silva-Trevino III*.

12

Nor, we note, can it be reconciled with the decision's holding: that a Texas offense much like Maryland's, criminalizing all forms of sexual contact with a child, does not categorically involve moral turpitude "[b]ecause [it] is broad enough to punish behavior that is not accompanied by the defendant's knowledge that the victim was a minor." 26 I. & N. Dec. at 835.

For that reason, footnote nine of *Silva-Trevino III*, limited to the "distinct category" of statutory rape, has no bearing on the status of the Maryland offense at issue here. And even if it did, the government's argument would face a second problem: There still is no explanation for the Board's decision to abandon the requirement of mental culpability as to a victim's age, in whole or in part. Footnote nine does no more than "reserve" the possibility that the Board might in the future reconsider *Silva-Trevino I*'s application to statutory rape; it is not itself a change in position, and it provides no explanation for why statutory rape should be excluded from *Silva-Trevino I*'s long-standing rule. *See Silva-Trevino III*, 26 I. & N. Dec. at 834 & n.9. The actual change in position comes only in this case, and it comes without explanation or even the requisite acknowledgment that it has happened. *See Encino Motorcars*, 136 S. Ct. at 2126 (agency "must at least display awareness that it is changing position").

It may be that the Board had good cause for changing its approach to mental culpability, and we do not foreclose that possibility here. But a reviewing court may not "speculate on reasons that might have supported" a change in agency position, *id.* at 2127, nor "supply a reasoned basis for the agency's action that the agency itself has not given," *id.* (quoting *State Farm*, 463 U.S. at 43); *see SEC v. Chenery Corp.*, 332 U.S.

13

194, 196 (1947). Here, we are without a reasoned explanation from the Board for its change in position. And without one, we cannot know whether and how the Board has accounted for the prospect that its prior policy may have "engendered serious reliance interests" in aliens who pled guilty to certain sexual offenses under the *Silva-Trevino* regime. *See Encino Motorcars*, 136 S. Ct. at 2126 (holding that agency explanation for changed position must take account of reliance interests engendered by former policy); *Silva-Trevino I*, 24 I. & N. Dec. at 689 n.1 (noting importance of providing aliens with notice as to which convictions will trigger immigration consequences). Because the Board's "path" from the *Silva-Trevino* cases to Jimenez-Cedillo's cannot "reasonably be discerned," its decision is arbitrary and capricious and must be set aside. *See Bowman Transp., Inc.*, 419 U.S. at 286.

Accordingly, we remand this case to the Board for further proceedings consistent with this opinion. *See Dalton v. United States*, 816 F.2d 971, 974–75 (4th Cir. 1987) (remanding with instructions that agency consider question anew where it failed to offer reasoned explanation); *INS v. Ventura*, 537 U.S. 12, 16–17 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context."). If it is the Board's judgment that there should be a change in the *Silva-Trevino* rule on mental culpability as to a victim's age, then it should provide the requisite "good reasons for [any] new policy" it adopts in this case. *See Encino Motorcars*, 136 S. Ct. at 2126.

We also leave it to the Board to consider in the first instance whether a new policy may be applied retroactively to Jimenez-Cedillo. Jimenez-Cedillo argues that when he entered his guilty plea in February of 2015, *Silva-Trevino I* was in effect, giving him every reason to believe he was pleading guilty to an offense that did *not* qualify as a crime involving moral turpitude because it did not allow for a mistake-of-age defense. As both the Supreme Court and the Board have made clear, aliens have an important interest in being able to anticipate the immigration consequences of guilty pleas, allowing them to enter "safe harbor" pleas that do not expose them to immigration-related penalties. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987 (2015); *Silva-Trevino I*, 24 I. & N. Dec. at 689 n.1. If on remand the Board takes the position that a change in *Silva-Trevino I*'s approach to mental culpability is appropriate, then it also should consider whether, under the traditional factors that bear on retroactivity analysis, *see ARA Servs., Inc. v. NLRB*, 71 F.3d 129, 135–36 (4th Cir. 1995) (citing *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 389–90 (D.C. Cir. 1972)), that new position may be applied to Jimenez-Cedillo and other aliens similarly situated.

## III.

For the foregoing reasons, we grant Jimenez-Cedillo's petition for review and remand the case to the Board for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED;*
*REMANDED FOR FURTHER PROCEEDINGS*

15