**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1238**

───────────────

CARLOS RAFAEL GOMEZ-RUOTOLO

        Petitioner

v.

MERRICK B. GARLAND, Attorney General

        Respondent.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued:  January 23, 2024                    Decided:  March 20, 2024

───────────────

Before WILKINSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

───────────────

Petition denied by published opinion. Judge Wilkinson wrote the opinion, in which Judge Quattlebaum and Judge Rushing joined.

───────────────

**ARGUED:**  Daniel Joseph Melo, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Petitioner.  Tim Ramnitz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Peter Alfredson, Taylor Joseph, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Petitioner.  Brian Boynton, Principal Deputy Assistant Attorney General, Shelley R. Goad, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

WILKINSON, Circuit Judge:

Carlos Gomez-Ruotolo was deported after being found removable as a noncitizen convicted of two or more crimes involving moral turpitude. After being denied relief by the Board of Immigration Appeals, Gomez-Ruotolo petitioned this court for review. He claims that the crimes for which he was convicted in state court—attempted sexual battery and electronic solicitation of a minor—are not crimes involving moral turpitude. He also contends that he should receive protection against removal under the Convention Against Torture. For the reasons that follow, we reject these contentions and deny the petition.

I.

Gomez-Ruotolo is a native citizen of Venezuela. He was brought to the United States by his parents in 2001, when he was ten years old. He and his family were admitted as lawful permanent residents and settled in Northern Virginia, where Gomez-Ruotolo attended school and resided as a young adult.

In 2009, law enforcement officers searched eighteen-year-old Gomez-Ruotolo's residence in Dumfries, Virginia pursuant to a federal search warrant. They discovered five images that depicted children as young as four years old being sexually abused. Gomez-Ruotolo was ultimately charged with "attempt[ing] to commit sexual battery on a minor child under the age of fifteen years, against the will of said minor child, by force, threat or intimidation or through the use of the child's mental incapacity or physical helplessness, in violation of Virginia Code Section 18.2-67.5(c)." J.A. 543. He pleaded guilty to this charge and acknowledged the potential adverse immigration consequences of his conviction. The Circuit Court of Prince William County, Virginia sentenced Gomez-

2

Ruotolo to 180 days imprisonment, suspended in full on the condition that he register as a sex offender and maintain good behavior. He served no time in prison.

Less than a decade later, Gomez-Ruotolo again found himself facing child sexual abuse charges. In 2018, a now twenty-eight-year-old Gomez-Ruotolo posted on Craigslist stating he desired to "get[] with someone younger, as young as it gets (barely legal)." J.A. 592. An undercover detective answered the advertisement posing as a fourteen-year-old girl. Gomez-Ruotolo arranged a meeting with the supposed fourteen-year-old for the express purpose of having sex with her. When he arrived at the designated meeting place in anticipation of the sexual encounter, he was instead greeted by police officers and promptly arrested. A Virginia grand jury indicted Gomez-Ruotolo with electronic solicitation of a minor between seven and fourteen in violation of Virginia Code § 18.2-374.3(c). Gomez-Ruotolo pleaded guilty and once again acknowledged the potential adverse immigration consequences of his conviction. He was sentenced to the mandatory minimum of five years' imprisonment. A court-ordered psychological evaluation, conducted as part of his sentencing, found that he had an "above average" risk of sexual offense recidivism. J.A. 658.

In June 2022, upon completion of his prison sentence, Gomez-Ruotolo was served with a Notice to Appear for removal proceedings, which charged him with removability (1) as a noncitizen convicted of two or more crimes involving moral turpitude pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), and (2) as an aggravated felon pursuant to 8 U.S.C. §§ 1101(a)(43)(A), 1227(a)(2)(A)(iii). With the assistance of counsel, Gomez-Ruotolo

3

denied that he was removable and sought protection from removal under the Convention Against Torture (CAT).

In August 2022, an immigration judge of the U.S. Department of Justice (DOJ) found that Gomez-Ruotolo was not removable as an aggravated felon but that he was removable as a noncitizen convicted of two or more crimes involving moral turpitude. The immigration judge also denied Gomez-Ruotolo CAT protection. He was thus ordered to be removed to Venezuela.

Gomez-Ruotolo appealed this decision to the Board of Immigration Appeals (BIA) in September 2022. He argued that attempted sexual battery was not a crime involving moral turpitude as the minimum conduct to sustain a conviction was insufficiently reprehensible. And he claimed that the electronic solicitation statute lacked the requisite culpable mens rea to be a crime involving moral turpitude. Gomez-Ruotolo also challenged the immigration judge's denial of CAT protection, asserting that he was likely to be tortured by the Maduro regime in Venezuela due to his lifelong ties to the United States.

In February 2023, the BIA affirmed the immigration judge in all respects and dismissed Gomez-Ruotolo's appeal. It explained that Virginia's attempted sexual battery offense is a crime involving moral turpitude as it is "defined in all instances" as "sufficiently reprehensible conduct that is contrary to the accepted rules of morality." J.A. 5. The BIA reasoned that Virginia's offense of electronic solicitation of a minor between seven and fourteen is likewise a crime involving moral turpitude because "statutes that limit convictions to defendants who knew or had reason to believe that their intentional sexual acts were directed at children—such as th[is] statute—categorically involve moral

4

turpitude." J.A. 6 (citing *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (BIA 2016)). The BIA also found Gomez-Ruotolo was not eligible for deferral of removal under CAT because he did not show that he would probably be tortured in Venezuela. It adopted the immigration judge's findings that Gomez-Ruotolo had never been threatened, harmed, or tortured by anyone in Venezuela since his departure more than twenty years ago, that he was not an outspoken critic of the Venezuelan government, and that no one was waiting to harm him upon his return. Having exhausted his administrative remedies, Gomez-Ruotolo was deported to Venezuela. He petitioned this court for review.

## II.

Gomez-Ruotolo's primary contention on appeal is that the Virginia state offenses for which he was convicted are not crimes involving moral turpitude. The Immigration and Nationality Act (INA) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). So, if either of the two crimes for which Gomez-Ruotolo was convicted is not a crime involving moral turpitude, he is not deportable under this provision of the INA.

## A.

Whether a criminal offense constitutes a crime involving moral turpitude is a question of law that we review de novo. *Salazar v. Garland*, 56 F.4th 374, 377 (4th Cir. 2023). This inquiry requires us to answer two questions. *See id.* First, what is the definition of moral turpitude under the INA? Second, does the criminal offense at issue fit within this definition?

5

On the definition of moral turpitude, we naturally reference BIA decisions. We do so because the agency has been delegated a regulatory and adjudicative role in this whole area, and its experience in the field often renders its decisions persuasive.

However, we need not defer to the BIA's determination of whether a state statute categorically involves conduct that is morally turpitudinous, because such a question is outside the BIA's authority and expertise. *Id.* at 281. Instead, we start with the text of the Virginia statutes at issue and consider "Virginia case law interpreting the[ir] provisions." *Cabrera v. Barr*, 930 F.3d 627, 639 n.7 (4th Cir. 2019); *see also Salazar*, 56 F.4th at 377 (finding that a state appellate court's interpretation of the statute at issue "constrains our analysis of the elements of state law"). The extent to which we credit the BIA's assessment of whether these state crimes involve moral turpitude "hinges on the thoroughness evident in the BIA's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Ramirez v. Sessions*, 887 F.3d 693, 703 (4th Cir. 2018) (internal quotations and alterations omitted).

B.

Our circuit has, with all due respect for the BIA, developed a sound definition of moral turpitude. A crime involving moral turpitude is one involving "behavior that shocks the public conscience as being inherently base, vile, or depraved." *Id.* at 704 (internal quotations omitted). Such a crime "requires two essential elements: a culpable mental state and reprehensible conduct." *Solis-Flores v. Garland*, 82 F.4th 264, 267 (4th Cir. 2023). For a crime "to meet the mens rea requirement" of culpability, "the crime must have, as an element, an intent to achieve an immoral result or willful disregard of an inherent and

6

substantial risk that an immoral act will occur." *Ramirez*, 887 F.3d at 704; *see also Granados v. Garland*, 17 F.4th 475, 481 (4th Cir. 2021). To meet the actus reus requirement of reprehensible conduct, the crime "must involve conduct that not only violates a statute but also independently violates a moral norm . . . and thus gives rise to 'turpitude'—meaning the debasement of the norm or the value." *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014).

In assessing whether a particular offense is a crime involving moral turpitude, we employ the categorical approach and examine whether the elements of the statute necessarily involve moral turpitude. *Salazar*, 56 F.4th at 377; *Pereida v. Wilkinson*, 592 U.S. 224, 233 (2021). In doing so, we "consider only the statutory elements, not the facts underlying the particular violation." *Mohamed*, 769 F.3d at 888; *see also Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012). If "those elements solely encompass behavior that involves moral turpitude . . . the crime is categorically one involving moral turpitude." *Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017). But if the "minimum conduct that has a realistic probability of being prosecuted under the statute" does not involve moral turpitude, then the statutory offense is not categorically one involving moral turpitude. *Matter of Silva-Trevino,* 26 I. & N. Dec. at 831; *see also Larios-Reyes v. Lynch*, 843 F.3d 146, 152 (4th Cir. 2016) (stating that the minimum conduct must have a "realistic probability, not a theoretical possibility, of being prosecuted.").

If a statute does not categorically fit the definition of a crime involving moral turpitude under this test, we assess whether the "statute sets out multiple, alternative elements of a crime, effectively creating several different crimes," and is therefore

7

divisible. *Salazar*, 56 F.4th at 378 (internal quotations omitted). This "modified categorical approach" involves "determin[ing] which of the various forms of the offense was the offense of conviction" by "consult[ing] a limited universe of documents" in the record of conviction. *Martinez v. Sessions*, 892 F.3d 655, 659 (4th Cir. 2018) (citing *Descamps v. United States*, 570 U.S. 254, 278 (2013)). When the conviction was based on a guilty plea, as each of Gomez-Ruotolo's was, "the record of conviction is composed of the charging document, the plea agreement, the plea colloquy, and any explicit findings of fact made by the trial judge." *Prudencio*, 669 F.3d at 485 (citing *Shepard v. United States*, 544 U.S. 13, 15 (2005)). Once we determine the offense of conviction, we assess whether the portion of the statute pertaining to that offense is a crime involving moral turpitude. *See Larios-Reyes*, 843 F.3d at 153–54; *Martinez*, 892 F.3d at 659.

With this framework in mind, we turn to Gomez-Ruotolo's crimes of conviction to determine whether they involve moral turpitude. First we take up his conviction for attempted sexual battery. We then turn to his electronic solicitation of a minor conviction.

### III.

Gomez-Ruotolo contends his 2010 conviction for attempted sexual battery was not a crime involving moral turpitude. He was convicted under the 2007 version of the statute, which read:

> An accused is guilty of sexual battery if he sexually abuses, as defined in [Virginia Code] § 18.2–67.10,
>
> (i)    the complaining witness against the will of the complaining witness, by force, threat, intimidation, or ruse,

(ii)      an inmate who has been committed to jail or convicted and sentenced to confinement in a state or local correctional facility or regional jail, and the accused is an employee or contractual employee of, or a volunteer with, the state or local correctional facility or regional jail; is in a position of authority over the inmate; and knows that the inmate is under the jurisdiction of the state or local correctional facility or regional jail, or

(iii)     a probationer, parolee, or a pretrial defendant or posttrial offender under the jurisdiction of the Department of Corrections, a local community-based probation program services agency, a pretrial services program agency, a local or regional jail for the purposes of imprisonment, a work program or any other parole/probationary or pretrial services program or agency and the accused is an employee or contractual employee of, or a volunteer with, the Department of Corrections, a local community-based probation program services agency, a pretrial services program agency or a local or regional jail; is in a position of authority over an offender; and knows that the offender is under the jurisdiction of the Department of Corrections, a local community-based probation program services agency, a pretrial services program agency or a local or regional jail.

Va. Code § 18.2-67.4(A) (2007).

Gomez-Ruotolo raises three primary challenges to the BIA's determination that this offense constitutes a crime involving moral turpitude. He first claims that parts (ii) and (iii) of the statute encompass conduct that is not reprehensible, and therefore the statute fails the categorical approach. He next asserts that, even if the modified categorical approach applies, the minimum conduct covered by part (i) of the statute is still not sufficiently reprehensible to be turpitudinous. He lastly posits that, even if sexual battery is a crime involving moral turpitude, attempted sexual battery—the crime for which he was convicted—is not. We address contention each in turn.

A.

9

Gomez-Ruotolo first notes that the Virginia Code defined sexual abuse, in relevant part, to be "an act committed with the intent to sexually molest, arouse, or gratify any person, where: (a) The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Va. Code § 18.2–67.10(6)(a) (2004). He points out that this definition does not require that the touching be nonconsensual. Thus, he claims, sexual abuse of a prisoner or parolee by a person in a position of authority, as proscribed by parts (ii) and (iii) of Virginia's sexual battery statute, is not categorically a crime involving moral turpitude because it prohibits consensual sexual acts. *See id.* § 18.2-67.4(A)(ii-iii).

Maybe so. But we need not reach that question because we find the sexual battery statute is divisible. We thus apply the modified categorical approach to determine under which part of the statute Gomez-Ruotolo was convicted, and then examine whether that part constitutes a crime involving moral turpitude.

As discussed, a statute is divisible if it "sets out multiple, alternative elements of a crime, effectively creating several different crimes." *Salazar*, 56 F.4th at 378 (internal quotations omitted). That is exactly what the provision at hand does. *See* Va. Code § 18.2-67.4(A). It codifies distinct offenses with distinct elements. Unlike parts (ii) and (iii), part (i) of the statute requires the sexual conduct to be "against the will" of the victim and be conducted "by force, threat, intimidation, or ruse." *See id.* And unlike part (i), parts (ii) and (iii) are limited to victims who are subject to the criminal justice system, and they require proof that the defendant was in a position of authority over the victim. *See id.*; *see also* Va. Model Jury Instr. – Crim. §§ 48.640, 48.650 (setting out separate model jury instructions

10

for part (i) versus parts (ii) and (iii)). Because the Commonwealth must "prove a unique element" under these distinct parts of the statute, it is divisible into what are effectively distinct crimes. *United States v. Jackson*, 32 F.4th 278, 285 (4th Cir. 2022); *see also Salazar*, 56 F.4th at 378.

Because the statute is divisible, we apply the modified categorical approach to determine under which part of the statute Gomez-Ruotolo was convicted. *See Salazar*, 56 F.4th at 378; *Mathis v. United States*, 579 U.S. 500, 513 (2016). In consulting the "limited universe of documents" in the record of conviction, *Martinez*, 892 F.3d at 659, it is clear that he was convicted under part (i). The amended indictment—which we are permitted to consider under *Prudencio*, 669 F.3d at 485 and *Shepard*, 544 U.S. at 15—charged Gomez-Ruotolo with attempting "to commit sexual battery on a minor child under the age of fifteen years, against the will of said minor child, by force, threat or intimidation or through the use of the child's mental incapacity or physical helplessness." J.A. 549. The inclusion of the terms "against the will" and "by force, threat or intimidation" in the indictment make plain that Gomez-Ruotolo was charged under part (i) of the Virginia sexual battery statute, as it is the only part where those terms appear. *See* Va. Code § 18.2-67.4(A). Thus, Gomez-Ruotolo's cause is not helped by his argument that the offenses in parts (ii) and (iii) of the statute are not categorically crimes involving moral turpitude.

B.

Gomez-Ruotolo claims that, under this modified categorical approach, part (i) of the Virginia sexual battery statute prohibits conduct that is insufficiently reprehensible to constitute a crime involving moral turpitude. He faces an uphill battle. We have said it is

11

self-evident that "sexual battery on another person" under Virginia Code § 18.2-67.4 "involves moral turpitude." *Mohamed*, 769 F.3d at 888; *see also Rivers v. Holder*, 496 F. App'x 264, 265 (4th Cir. 2012) (per curiam) (holding that Virginia sexual battery under § 18.2–67.4 "is categorically a crime involving moral turpitude"). The BIA, too, has long considered nonconsensual sexual conduct to be morally reprehensible. *See e.g.*, *In the Matter of S-*, 5 I. & N. Dec. 686, 687 (BIA 1954); *Matter of Z-*, 7 I. & N. Dec. 253, 255 (BIA 1956). And Virginia appellate courts interpreting the statute have found, even when nonconsensual touching does not meet the statute's requirement of being done "by force, threat, intimidation, or ruse," it is "outrageously offensive," *Woodard v. Commonwealth*, 499 S.E.2d 557, 559 (Va. App. 1998), and "reprehensible." *Wilson v. Commonwealth*, No. 2636-96-2, 1997 WL 679820, at *2 (Va. Ct. App. Nov. 4, 1997); *see also Robinson v. Commonwealth*, 828 S.E.2d 269, 273 (2019) (O'Brien, J., dissenting) (disagreeing that the defendant's nonconsensual touching violated § 18.2-67.4, yet finding it was "reprehensible and offensive"). Notwithstanding petitioner's claim that our statement in *Mohamed* was on an issue not briefed by the parties, we now take this opportunity to affirm the obvious: section 18.2-67.4(A)(i) categorically constitutes a crime involving moral turpitude.

Gomez-Ruotolo protests that Virginia defines the sexual abuse proscribed by part (i) to include the touching of "material directly covering such intimate parts," including the clothing covering a buttocks, which he refers to as de minimis conduct that is not inherently base, vile, or depraved. Va. Code § 18.2–67.10(6)(a). Thus, he contends, subsection (i) cannot categorically qualify as a crime involving moral turpitude. *See* § 18.2-67.4(A).

12

This argument oversimplifies the statute. Part (i) only criminalizes nonconsensual conduct that is "against the will" of the victim. *Id.* What's more, part (i) requires that the sexual conduct occur "by force, threat, intimidation, or ruse." *Id.* We have little trouble in concluding that nonconsensual sexual acts are "inherently base, vile, or depraved" when done by force, threat, intimidation, or ruse. *See Ramirez*, 887 F.3d at 704.

Start with force. At the time of Gomez-Ruotolo's conviction in 2010, the "force" necessary to sustain a conviction under this statute required more than "mere nonconsensual touching of the intimate parts." *Johnson v. Commonwealth*, 365 S.E.2d 237, 240 (Va. App. 1988), *overruled by Robinson v. Commonwealth*, 828 S.E.2d 269, 272 (Va. App. 2019) (en banc). Rather, a defendant needed to have used force sufficient "to overcome the will" of the victim. *Id.*; *see Wactor v. Commonwealth*, 564 S.E. 2d 160, 163 (Va. App. 2002) (stating "force must be sufficient to overcome [the victim's] resistance"). The realistic probability is that no prosecution would be brought for anything less. *See e.g., Robinson*, 828 S.E.2d at 272–73 (finding element of force met when defendant held child victim down and pushed him against bed when he tried to escape). The very word "force" in the statute means applying enough pressure to overpower a victim's rejection of unwanted sexual advances. That is undoubtedly reprehensible conduct that is "inherently base, vile, or depraved." *Ramirez*, 887 F.3d at 704.

So too is sexual battery by threat or intimidation. Virginia's model jury instructions define "threat" in the sexual battery context to require "expression of an intention to do bodily harm or use force." Va. Model Jury Instr. – Crim. § 48.670. The model jury instructions likewise state that sexual battery by intimidation requires the defendant to

13

"put[] a victim in fear of bodily harm by exercising such domination and control of [him; her] as to overcome [his; her] mind and overbear [his; her] will." *Id.* § 48.675 (brackets in original). This definition of intimidation in the Virginia sexual battery context has been repeatedly affirmed by the state's appellate courts. *See Woodard v. Commonwealth*, 499 S.E.2d at 559; *Clark v. Commonwealth*, 408 S.E.2d 564, 565–66 (Va. App. 1991). As should be clear, striking fear in the heart of a victim so that he or she submits to unwanted sexual touching is a morally reprehensible act.

Lastly, sexual battery by ruse is also turpitudinous conduct. Crimes that have fraud as an element are categorically crimes involving moral turpitude. *Salazar*, 56 F.4th at 379 (citing *Jordan v. De George*, 341 U.S. 223, 227–29 (1951)); *see also Ramirez*, 887 F.3d at 698. Moreover, as we recognized in *Ramirez*, the BIA has held "that conduct involving 'deceit, graft, trickery, or dishonest means' is morally turpitudinous." 887 F.3d at 703 (quoting *Matter of Jurado–Delgado*, 24 I. & N. Dec. 29, 35 (BIA 2006)). And we have found that the reprehensible element of a crime involving moral turpitude is met by "acts of subterfuge." *Uribe v. Sessions*, 855 F.3d 622, 627 (4th Cir. 2017) (finding that Maryland third degree burglary, which includes gaining entry to a dwelling "by artifice, fraud, conspiracy, or threat," categorically qualifies as a crime involving moral turpitude). We thus hold that unwanted sexual touching by "ruse" involves moral turpitude because it requires fraud, deception, trickery, or subterfuge.

Because all crimes encompassed by Virginia Code § 18.2-67.4(A)(i) are reprehensible and morally turpitudinous, we hold that Gomez-Ruotolo's conviction for attempted sexual battery is a crime involving moral turpitude.

14

C.

Gomez-Ruotolo, however, claims that this is an impermissible inferential leap. He emphasizes that he was convicted for merely *attempting* to commit sexual battery and insists that an inchoate version of an offense is not necessarily a crime involving moral turpitude just because the underlying substantive offense is. Even if the underlying crime of sexual battery involves moral turpitude, he posits, attempted sexual battery falls below the turpitudinous threshold.

Not so. Federal courts uniformly use the underlying substantive offense to determine whether an associated inchoate offense involves moral turpitude. *See Daye v. U.S. Att'y Gen.*, 38 F.4th 1355, 1362 n.5 (11th Cir. 2022) (stating that "in immigration proceedings inchoate offenses such as conspiracy qualify as a CIMT if the underlying substantive offense qualifies as a CIMT"); *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007*)* (examining underlying crime to determine whether solicitation offense was one involving moral turpitude)*; United States ex rel. Meyer v. Day*, 54 F.2d 336, 337 (2d Cir. 1931) ("There is no substance in the appellant's contention that there is a distinction in respect to moral turpitude between the commission of the substantive crime of grand larceny and an attempt to commit it."). The BIA has long taken the same approach, finding "no meaningful distinction between an inchoate offense and the completed crime" in determining moral turpitude. *Matter of Gonzalez Romo*, 26 I. & N. Dec. 743, 746 (BIA 2016); *see also Matter of Vo*, 25 I&N Dec. 426, 428 (BIA 2011); *Matter of Bronsztejn*, 15 I. & N. Dec. 281, 282–83 (BIA 1974) ("We have held repeatedly that a person who is found deportable if convicted of a substantive offense would be deportable if convicted of an

15

attempt to commit that offense."). Thus, because we found sexual battery under Virginia Code § 18.2-67.4(A)(i) is a crime involving moral turpitude, we likewise hold that attempted sexual battery is a crime involving moral turpitude.

IV.

Gomez-Ruotolo next claims electronic solicitation of a minor under Virginia Code § 18.2-374.3(c) is not a crime involving moral turpitude. The statute reads:

> It is unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person *he knows or has reason to believe* is a child younger than 15 years of age to knowingly and intentionally:
>
> 1.  Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person;
>
> 2.  Propose that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child;
>
> 3.  Propose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or
>
> 4.  Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any purposes set forth in the preceding subdivisions.

Va. Code § 18.2-374.3(c) (emphasis added).

Gomez-Ruotolo concedes that sexual solicitation of a minor under fifteen years old is reprehensible conduct sufficient to satisfy the actus reus element of a crime involving moral turpitude. But he claims the statute's inclusion of the phrase "has reason to believe"

16

renders its mens rea insufficient for the statute to qualify as a crime involving moral turpitude. That is because, in his view, this phrase permits conviction of a defendant with a negligent mens rea, and "[c]rimes involving criminal negligence . . . are generally excluded from the category of crimes that involve moral turpitude." *Sotnikau*, 846 F.3d at 737.

This argument is unpersuasive for several reasons. First, BIA precedent undermines it. The BIA has held that "a crime involving intentional sexual conduct by an adult with a child involves moral turpitude as long as the perpetrator knew or should have known that the victim was a minor." *Matter of Silva-Trevino*, 26 I. & N. Dec. at 834. The DOJ—the agency responsible for interpreting and applying the provision of the INA at issue—was "clear and consistent" in articulating this rule during the decade leading up to Gomez-Ruotolo's conviction. *See Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 295–96 (4th Cir. 2018) (citing *Matter of Silva-Trevino*, 26 I. & N. Dec. at 834; *Matter of Silva-Trevino*, 26 I. & N. Dec. 550 (A.G. 2015); *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), *vacated on other grounds by Silva-Trevino v. Holder*, 742 F.3d 197 (5th Cir. 2014)). Given that we respect BIA precedent defining "the types of conduct" that the term moral turpitude includes, *Nunez-Vazquez v. Barr*, 965 F.3d 272, 279 (4th Cir. 2020), this court has noted that a sexual offense against a child categorically involves moral turpitude when the perpetrator "should have known that the victim was a minor." *Jimenez-Cedillo v. Sessions*, 885 F.3d at 294.

Having established that the requisite mens rea is satisfied by a "should have known" standard for child sex crimes, the conclusion that Virginia electronic solicitation of a minor

17

is a crime involving moral turpitude follows naturally. A "person 18 years of age or older" who "use[s] . . . electronic means, for the purposes of soliciting, with lascivious intent, any person he . . . *has reason to believe* is a child younger than 15 years of age" is functionally equivalent to an adult who *should have known* that the person he sexually solicited was a minor. Va. Code § 18.2-374.3(c). The language may not be identical, but, as Gomez-Ruotolo conceded in his opening brief, the import is the same. Appellant's Br. 23 (stating a different "statute's 'should have known' language closely tracks the 'reason to believe' language" at issue). Thus, well-established BIA precedent counsels us to hold that Virginia's electronic solicitation of a minor offense is a crime involving moral turpitude.[*]

Moreover, Virginia's electronic solicitation statute does not stop with the mens rea requirement that a perpetrator should have known of the victim's age. The statute requires the perpetrator's use of electronic means "to knowingly and intentionally" subject "any child to whom he is not legally married" to enumerated sexual acts. Va. Code § 18.2-374.3(c). Therefore, to be convicted under this statute, an adult must not only use electronic means to solicit with lascivious intent someone he knew or had reason to believe was a child under fifteen, but he must do so to knowingly and intentionally subject an actual child

---

[*] The BIA has since lowered the mens rea requirement for child sex offenses to involve moral turpitude by holding that "sexual solicitation of young teenagers and children is a crime involving moral turpitude, even if knowledge of the age of the child is a strict liability finding." *Matter of Jimenez-Cedillo*, 27 I. & N. Dec. 782, 791 (BIA 2020). We do not use this holding in our analysis of Gomez-Ruotolo's 2019 conviction for electronic solicitation of a minor, as the BIA explicitly stated its decision applied only prospectively in the Fourth Circuit. *See id.* at 784. But, if we did, the BIA's new rule would only further undermine Gomez-Ruotolo's argument that the Virginia statute lacked a sufficient mens rea to constitute a crime involving moral turpitude.

18

to sexual acts. *Id.* The requirement that the adult perpetrator intentionally seek sexual activity with a child helps establish that the crime at issue in all cases requires "an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur." *Salazar*, 56 F.4th at 378. The text of Virginia Code § 18.2-374.3(c), read as a whole, thus contradicts Gomez-Ruotolo's claim that this crime does not categorically involve moral turpitude.

Finally, the Supreme Court of Virginia's interpretation of this statute further undercuts Gomez-Ruotolo's contention that the statute lacks the requisite mens rea to qualify as a crime involving moral turpitude. In upholding the statute against a vagueness and overbreadth challenge that focused on its "reason to believe" language, the Supreme Court of Virginia rejected the notion that a defendant could be convicted of the offense with a negligent mens rea. *Stoltz v. Commonwealth*, 831 S.E.2d 164, 168–69 (Va. 2019) (analyzing Va. Code § 18.2-374.3(c)). The court emphasized that "the act of using a communications system is the actus reus of the crime, while the purpose of soliciting the child is the mens rea." *Id.* at 171. In doing so, the court referenced *Gorin v. United States*, 312 U.S. 19 (1941), which held that the use of "reason to believe" in a criminal statute required "those prosecuted to have acted in bad faith" and that "scienter [be] established." *Id.* at 28. This holding echoed earlier reasoning by the Court that "reason to believe" requires a showing of culpability greater than negligence. *See e.g.*, *Shaw v. Merchants' Nat. Bank*, 101 U.S. 557, 566 (1879). In light of *Stoltz* and the cases it built upon, we cannot say that a merely negligent person has a "realistic probability . . . of being prosecuted" under Virginia's electronic solicitation of a minor provision. *Nunez-Vasquez*, 965 F.3d at

19

282. Therefore, Gomez-Ruotolo's conviction for electronic solicitation of a minor under § 18.2-374.3(c) was a conviction for a crime involving moral turpitude.

In sum, the two crimes for which Gomez-Ruotolo was convicted are both crimes involving moral turpitude. We therefore reject his challenge and affirm the BIA's determination that he was deportable under 8 U.S.C. § 1227(a)(2)(A)(ii).

V.

Gomez-Ruotolo also challenges the BIA's refusal to grant him protection under the Convention Against Torture. To receive CAT protection, an applicant must prove that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal," 8 C.F.R. § 1208.16(c)(2), and that "this torture will occur at the hands of government or with the consent or acquiescence of government," *Turkson v. Holder*, 667 F.3d 523, 526 (4th Cir. 2012). "Torture" is defined by the implementing regulations, in relevant part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). In assessing a claim for CAT protection, the DOJ shall consider "all evidence relevant to the possibility of future torture," including "[e]vidence of past torture," "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured," and "[e]vidence of gross, flagrant, or mass violations of human rights in the country of removal." *See id.* § 1208.16(c)(3). We assess the aggregate risk of torture from all sources when determining whether a CAT applicant is more likely than not to be tortured in a particular country of removal, and require the agency to do the same. *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 972–73 (4th Cir. 2019).

20

We review the agency's factual determination that an applicant failed to establish a clear probability of torture for substantial evidence. *Id.* at 972. This standard of review, as applied in the CAT protection context, means that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotations omitted).

Substantial evidence supported the immigration judge's finding, and the BIA's affirmance, that Gomez-Ruotolo did not qualify for CAT protection. The immigration judge considered and properly rejected Gomez-Ruotolo's claim that he was more likely than not to face torture in Venezuela due to his American identity. The judge credited Gomez-Ruotolo's own testimony that no one in Venezuela had sought to harm him in the past two decades and that no one was planning to harm him upon his return. The judge also found that Gomez-Ruotolo was not an outspoken critic of the Venezuelan government. Having made such factual findings, it was eminently reasonable for the immigration judge to conclude that Gomez-Ruotolo was not likely to be tortured upon removal to Venezuela.

Gomez-Ruotolo claims his particular circumstances increase the likelihood he will be tortured in Venezuela because he has few local ties, has long resided in America, and primarily speaks English. While the evidence he presented on conditions in Venezuela suggest that living there may be fraught for those with close ties to America, Gomez-Ruotolo did not come close to showing that someone with his background is more likely than not to be tortured. As we have repeatedly held, the "mere existence of a pattern of human rights violations in a particular country does not constitute a sufficient ground for finding that a particular person would more likely than not be tortured." *Herrera-Martinez*

21

*v. Garland*, 22 F.4th 173, 187 (4th Cir. 2022); *Nolasco v. Garland*, 7 F.4th 180, 191 (4th Cir. 2021); *Singh v. Holder*, 699 F.3d 321, 334 (4th Cir. 2012).

The immigration judge and BIA had substantial evidence for their conclusion that Gomez-Ruotolo was not likely to be tortured if deported to Venezuela. We therefore hold the agency properly denied him CAT protection.

VI.

We have reviewed with care petitioner's challenges to his removal and find them unavailing. For the foregoing reasons, the petition for review is denied.

*PETITION DENIED*